The People of the State of New York ex rel. Phyllis M. Heller, Relator, against Saul I. Heller et al., Defendants.*

Supreme Court, Special Term, New York County, March 24, 1945.

*James D. C. Murray* for relator.

*Jay Leo Rochschild* for defendants.

Eder, J. This habeas corpus proceeding involves the custody of a boy now approaching twelve years of age. The parents are divorced and the father has remarried; the child is presently with the father and stepmother. This proceeding is instituted by petitioner, the mother of the boy, and she seeks his custody.

The hearing has been a protracted one and the record is voluminous; an extended analysis is not regarded as necessary; detailed review will not serve any useful purpose. However, the court has carefully considered the evidence realizing the importance of the matter to all the parties concerned. While the desires of the parents are, of course, factors to be considered, the primary and paramount concern of the court is what is best for the welfare of the child. (*People ex rel. Allen* v. *Allen,* 40 Hun 611; *People* v. *Van Dyk,* 33 N. Y. S. 2d 766; *Baer* v. *Baer,* 51 S. W. 2d 873 [Mo.].†)

The court, with the consent of the respective parties and their attorneys, selected three eminent psychiatrists from a list furnished by counsel; the parties agreed to share equally the charge for the services of the psychiatrists; they examined the parents of the child; their report has carried much weight

---

* See, also, *People ex rel. Heller* v. *Heller,* 183 Misc. 630, affd. 268 App. Div. 976, and 184 Misc. 75.— [Rep.

† See, also, *People ex rel. Geismar* v. *Geismar,* 184 Misc. 897, and "*Horner*" v. "*Horner*", 184 Misc. 989, affd. *sub nom. Hartstein* v. *Hartstein,* 269 App. Div. 770.— [Rep.

in the ultimate conclusion reached by the court which has also been impressed by the testimony of Dr. Bender, also shown to be possessed of high professional standing. They are in accord in their conclusion that it is not for the best interests of the child that petitioner should have his custody.

With respect to right of visitation, even though custody be denied, Dr. Bender's testimony is that visitation should be withheld stating it to be her professional opinion that it would be injurious to the child, for several reasons: first, psychologically, that such visits would prove disturbing to him and likely to produce a mental disorder of the *folie à deux* type and further cause conflicts and difficulties because of the many problems he has to face in respect to petitioner; secondly, that such visits cause a neurotic state; thirdly, that in addition, there is the danger, which this expert thinks is specific, of some harm coming to the child through delusional attitudes of petitioner and that it has been the experience of this expert that such harm has resulted in cases of that nature.

In *Bauer* v. *Bauer* (174 App. Div. 914) the father was by a decree of divorce awarded the sole custody of his young son, without any right of visitation being granted to the mother of the child; the father, however, of his own volition, permitted her to frequently visit the boy; later he terminated this privilege because of the behavior of the mother which he regarded as detrimental to the welfare of the child; she then petitioned Special Term, successfully, for an order granting to her the right of visitation; this, despite the fact that the record before the Special Term disclosed that a physician who had examined the child found that he was neurotic and that it was his professional opinion that the depression and irritability and mental strain imposed upon the child by the visits were harmful; that he became nervous and cross. The appellate court reversed the order granting the right of visitation and denied the application, alluding to this feature of the record.

In *Waldref* v. *Waldref* (135 Minn. 473), the mother was awarded by a decree of divorce sole custody of an infant son during his minority; no right of visitation was granted to the father; he petitioned the court for such right and it was denied and he thereupon appealed. It appeared that there was evidence from which the court could find that the child was of a sensitive and nervous disposition; that unusual or undue excitement had a bad effect upon him and that it would be detrimental to his health to be visited by the father and that the welfare of the boy would be better secured if he was left in the sole custody

and control of his mother. The order of denial was affirmed; the appellate court pointed out — and it is the universal rule — that " ' The essential thing is the welfare of the child.' "

It is enough to deny custody or the right of visitation, if, in the opinion of the court, there is a possibility, however slight, that harm may come to the child by the granting of custody or the right of visitation.

In denying the application herein the court is aware that it is a hard decision upon the petitioner as the mother of the child; judges are not unaffected by human emotional reactions. The court is fully cognizant that " There is a proneness on the part of masculine human nature, from which even judges are perhaps not entirely exempt, to lean in sympathy to the side of the wife and mother in these cases of domestic trouble and controversy " (*Linzay* v. *Linzay,* 51 La. Ann. 630, 632); but even with this coign of vantage in her favor, the court may not shirk an unpleasant ruling but must make its determination upon the record; it may not balance between its personal inclina - tions and its plain duty as it sees it.

The writ is therefore dismissed and the application denied. Order signed.