Charles F. Granby, J.
The respondent has entered an admission to the petition of paternity herein which alleges that *243 he is the father of the petitioner’s daughter, born on August 3, 1973. At the time of conception the petitioner was 13 years old and the respondent was 61. The petitioner has never been married or previously pregnant. The respondent has had one marriage which was terminated by divorce in March, 1973 after he and his wife separated in July, 1972. He is the father of two adult daughters and has eight grandchildren. As a result of his sexual activities with the petitioner, the respondent pled guilty to rape, third degree, a class E felony. He was sentenced to probation for five years with the special condition that he stay away from the petitioner. The issue before the court concerns the respondent father’s request for visitation rights.
The court has received a probation department report and mental health clinic evaluation of the respondent. The conclusions of these agencies conform to the court’s own impression of the respondent after observing him at a number of court appearances and listening to his testimony. The reports indicate that until this incident the respondent had been a normal, law-abiding, productive citizen and parent. There is nothing in his background to indicate that he was likely to be involved in any type of criminal or illicit sexual activity. Respondent’s reaction to his association with the petitioner is of particular interest. Despite some verbalizing to the contrary, it is clear that the respondent feels no guilt or remorse over his actions. It appears to the court that he sincerely believes he loves the petitioner. His intentions have always been and continue to be honorable. He continues to offer to marry the petitioner and provide for the child. He offers this not out of a sense of obligation, but out of a sincere affection for the petitioner and her child. He is obviously proud of his re-established parenthood and is anxious to exercise all the rights and duties of a father. Thus, he asks to be granted rights of visitation which are being withheld by the petitioner’s parents.
The situation is summed up by the examining psychiatrist as follows: “ He stated that he is very much in love with this thirteen year old girl * # * that he felt what he did was wrong but justified it on the basis that they love each other * * * He appears, in this one isolated area to have relatively poor judgment and lack of insight * * * in view of the fact that this apparently is not his pattern of behavior and in view of the fact that he appears to be treating this child emotionally as an adult woman, it would appear that the most reasonable diagnosis would be Without Mental Disorder.”
The petitioner, now 14, lives with her parents and attends school. The child resides with her in the household. It is appar *244 ent that she shared a mutual affection with the respondent and was willing to marry him both before and after she became pregnant. At first she wanted the respondent to have visitation, now she is unsure of visitation and her desire to marry the respondent. It is clear that she does not feel wronged by the respondent and probably continues to hold some affection for him. It is equally clear that she is very confused as to her own feelings due to the experience of motherhood, her parents’ understandable bitterness towards the respondent (a long time family friend) and the various court proceedings.
The shocking aspect about this case is not the nearly 50 years age difference between the parties, but the tender age of the petitioner. The poignant aspect is that both parties apparently did (and may still) enjoy a mutually affectionate relationship and a desire to marry and act as parents to their child.
Since the United States Supreme Court decision in Stanley v. Illinois (405 U. S. 645 [1972]) the rights of an unwed father have come under renewed scrutiny by the courts (e.g., Doe v. Department of Social Servs. of City of Poughkeepsie, 71 Misc 2d 666). The courts of this State recognize the right of a father to visit his out-of-wedlock child in a proper case (Matter of “ Z ” v. “ A ”, 36 A D 2d 995 [remitted to Family Ct.]; Anonymous v. Anonymous, 34 A D 2d 942 [remanded for additional evidence]; People ex rel. “ Francois ” v. “ Ivanova ”, 14 A D 2d 317 [granted]; Matter of Anonymous, 12 Misc 2d 211 [granted]; Matter of Anonymous v. Anonymous, 56 Misc 2d 711 [granted]; Cornell v. Hartley, 54 Misc 2d 732 [granted if mother consents]). This rule was codified by the Legislature in 1971 (Family Ct. Act, § 549). No recent New York case has been found denying that such a right exists, nor, in fact, denying visitation privileges to the father. It should be noted, however, that in all of the cases cited above, except the Family Court case of Anonymous v. Anonymous, a parent-child relationship had already been established by the father residing with the mother and child or by the actual exercise of visitation over a period of time. It is clear from these cases that the best interests of the child is the ultimate standard to be applied in determining the question of visitation. Whether the child is legitimate or illegitimate, the rights of the parents are a secondary consideration. The court’s first concern is for the welfare of the child involved herein. The court is not concerned with determining rights as between the two parents' of the child but intervenes solely for her protection by virtue of the prerogative which belongs to the State as parens patrice (Finlay v. Finlay, 240 N. Y. 429; Matter of Anonymous, supra).
*245 "While recognizing and approving of the right of a father to visit his out-of-wedlock child in an appropriate case, we feel that this is not such a case. As was pointed out above, the reported cases granting visitation have generally involved situations where a father-child relationship had already developed. The only exception was the afore-mentioned case of Anonymous v. Anonymous. In that opinion the court stressed the advantages accruing to a child whose father is interested and available to provide the natural love and affection of a parent. It was also pointed out that to conceal the truth might ultimately be harmful to the child. Justice Beeitel, dissenting in the “ Ivanova ” case (supra), analyzes the possible effects on the child much differently. The latter opinion is the more persuasive when applied to the facts of the instant case.
The petitioner and her child will continue to live with her parents for the foreseeable future. These people are strongly opposed to the respondent. Indeed, the respondent is under a court order to stay away from the petitioner. Thus, even if visitation were to be granted, it could not be exercised in a normal manner. A father figure in the person of the petitioner’s father does exist in the child’s household. By the time the child reaches adolescence, the respondent will be over 75, if still alive. It is highly doubtful that a meaningful father-daughter relationship could ever develop between them. Without this possibility there is little reason to permit visitation. It is more likely that the child would be confused by the situation particularly as she was exposed to the community’s attitude towards this unlikely situation. We can reasonably expect that the petitioner’s attitude towards the respondent will more approximate that of her parents as time goes by and that she will eventually enter into a more conventional romance and ultimately marry and establish her own household. Justice Beeitel’s opinion seems particularly appropriate: “ Moreover, apart from the child, but because of the child, there is the enforced continuance of relationship between the * * * mother and the father, stemming from a situation socially condemned and likely to be intolerable to explain or sustain. This is particularly significant if one is to allow the mother, and tangentially her child, to struggle toward an accepted place in the community * * * Worse, the father’s visitation may make even more difficult the mother’s adjustment or future marriage — all to the detriment of her child.” (People ex rel. “ Francois ” v. “ Ivanova ”, 14 A D 2d 317, 321, 323, supra [dissent].)
The respondent’s request for visitation rights is denied.
*246 The denial" of visitation rights certainly is no defense to the action for support and the court hereby directs that the respondent pay support for the child at the rate of $10 weekly through the Family Court Support Bureau. However, the court will strongly recommend to the petitioner and her family that they waive the collection of these support payments. It would seem to be in the best interests of the child and the petitioner to terminate all .contact of any nature with the respondent.