MICHELLE LEA HUSS, a minor child, by and through her mother and next friend, PATRICIA A. HUSS, *Appellant*, v. FRANCIS L. DEMOTT, *Appellee*.

No. 47,421

TRICIA ANN STEADMAN, a minor child, by and through her mother and next friend, WILMA BEERBOWER, *Appellant*, v. JOHN SAUERWEIN, *Appellee*.

(524 P. 2d 743)

Opinion filed July 17, 1974.

*Daniel F. Meara*, of Meara & Eichor, of Fort Scott, argued the cause and was on the brief for the appellants.

*R. L. White*, of White & Nettels, of Pittsburg, argued the cause and was on the brief for Francis L. DeMott, appellee.

*Forrest E. Short*, of Short & Short, of Fort Scott, argued the cause, and *Joel B. Short*, of the same firm, was with him on the brief for John Sauerwein, appellee.

The opinion of the court was delivered by

FROMME, J.: Separate appeals to this court were perfected raising identical questions in two different paternity actions; both actions were dismissed with prejudice in the district court. The appeals were consolidated in this court on a stipulation by all parties that the questions are identical and a decision in the *Huss* case No.

47,385 will be determinative of the *Steadman* case No. 47,421.

Effective July 1, 1970, the legislature repealed what was commonly called the bastardy statute (K. S. A. 62-2301, *et seq.*) and enacted what is now referred to as the statute governing paternity proceedings (K. S. A. [Weeks] 38-1101, *et seq.*). The new statute contains the following limitation section:

*"No action to determine paternity* shall be instituted more than *one year* after the birth of the child whose paternity is in issue." (38-1104. Emphasis added.)

A similar limitation was contained in the former bastardy statute as follows:

*"No prosecution under this act* shall be instituted after *two years* from the birth of such bastard child." (K. S. A. 62-2317. emphasis added.)

The primary question raised in these appeals is whether the limitation in the new statute governing paternity proceedings applies to non-statutory action for support when brought by an illegitimate child in accordance with *Doughty v. Engler,* 112 Kan. 583, 211 Pac. 619, 30 A. L. R. 1065. We have previously refused to apply the limitation section in the bastardy statute to actions for support brought by illegitimate children against their putative fathers.

Under the facts of this case (*Huss* No. 47,385) the action was filed on April 5, 1973, by and on behalf of the illegitimate child. This was slightly more than three years after the child was born. If the new limitation section in the paternity statute applies the cause of action is barred.

A review of the former case law and the bastardy statute will be helpful. In Kansas we have had two distinct proceedings in which the paternity of an illegitimate child could be legally determined. One proceeding could be brought by the mother under the bastardy statute. The other could be brought by the illegitimate child based on the decision in *Doughty v. Engler,* supra. The child's cause of action did not depend upon the enforcement of the mother's rights under the bastardy statute (see *Myers v. Anderson,* 145 Kan. 775, 67 P. 2d 542; *McGregor v. Turner,* 205 Kan. 386, 469 P. 2d 324; and *Lawrence v. Boyd,* 207 Kan. 776, 486 P. 2d 1394); nor was it limited by the two year provision, for in *Doughty v. Engler,* supra, the child was 4 years old when the action was brought and in *Grayson v. Grayson,* 182 Kan. 285, 320 P. 2d 803, the children who filed the action were 10, 9 and 6 years old.

Under the former bastardy statute the mother was the prosecuting witness (K. S. A. 62-2301) and the action had to be initiated by

the mother (see *State v. Jehlik*, 66 Kan. 301, 71 Pac. 572). The action was for the benefit of the unmarried mother. It was prosecuted in the name of the State of Kansas on the relation of the mother. (K. S. A. 62-2303.) Criminal sanctions were available if the father refused or failed to comply with an adverse judgment. (K. S. A. 62-2313.) The proceedings had the generally accepted features of a criminal prosecution. The proceedings were initiated on a complaint. The putative father was then arrested on a warrant and brought before a justice of the peace. (K. S. A. 62-2301.) After a hearing before the justice of the peace he was either discharged or bound over for trial in the district court. (K. S. A. 62-2305.) The history of the statute and the nature of the proceedings are discussed in *State, ex rel., v. Pinkerton*, 185 Kan. 68, 340 P. 2d 393.

In comparison the child's action under *Doughty* is different in various ways. It is initiated in the district court as any other civil action. Its purpose is to force the putative father to support the illegitimate child. The action is based on the father's obligation to support his children. That obligation extends to legitimate and illegitimate children alike and arises from the public policy of this state. See *Doughty v. Engler*, supra. In such an action paternity has to be established in order to give rise to an obligation to support. In *Myers v. Anderson*, supra, the right to support is held to be a chose in action belonging solely to the child. The right of action cannot be compromised or settled by a parent acting independently. See *Grimes v. Grimes*, 179 Kan. 340, 295 P. 2d 646, and *Myers v. Anderson*, supra. Such an action can be initiated on behalf of the child by a guardian or next friend. The death of the mother does not affect the right to bring and maintain the child's action. As previously pointed out the action was not subject to the period of limitation contained in the bastardy statute.

In support of the district court's orders the appellees argue the limitation section in the new statute was intended by the legislature to limit the time in which the action for support may be brought by an illegitimate child. On the basis of the statute (38-1104) the appellees contend an illegitimate child's action for support is forever barred one year after birth unless the issue of paternity has been previously resolved. Appellees further argue the change in phraseology and the deletions from the statute raise a strong presumption that a change in meaning was intended by the legislature.

We accept that postulate on the basis of *State, ex rel., v. Richardson*, 174 Kan. 382, 386, 256 P. 2d 135. In construing changes in a

statute this court will presume the legislature intended to supply some want, to fill some deficiency or to add something to make the former legislation more complete and workable. It does not necessarily follow, however, that the change intended is that urged by appellees in these appeals.

Appellees lean heavily on the language in the new limitation section (38-1104) which, they say, has broadened the limitation to cover all paternity actions. In expressing the limitation under the former statute (62-2317) the legislature used the words "no prosecution under this act" while in the new act (38-1104) the words "no action to determine paternity" are used. What was the purpose of the legislature in making this change?

We note under the former act a "prosecution" was commenced on a complaint with a warrant issued for the arrest of the putative father. As previously pointed out, when the new statute was enacted all sections of the old act which sounded in the nature of a criminal prosecution were deleted. The new act refers to the proceeding, not as a "prosecution" but as "a civil action to determine paternity." Because of this legislative change it became necessary to change the wording in the limitation section. The proceeding was no longer a "prosecution." It is "a civil action to determine paternity."

Although not controlling, it may be of some interest to note that the Revisor of Statutes, in keeping with the tenor of the new act, removed the sections from Chapter 62 of the Kansas Statutes Annotated and placed them in Chapter 38. Chapter 62 was at that time commonly understood to relate to criminal procedure and Chapter 38 related to infants.

The new law (38-1101, *et seq.*) retains practically all of the key provisions of the old bastardy statute with the exception of those provisions which gave the action the flavor of a criminal prosecution. The new law requires that the action be initiated upon the sworn complaint (petition) of the unmarried mother. No other person may do so but once the action is initiated the death of the mother does not abate the action. In case the mother dies while her action is pending the name of the child is substituted for that of the mother and a guardian is appointed to prosecute the mother's action (38-1108). At any time before final judgment on motion of the mother the court may dismiss the action with prejudice, if it appears that satisfactory provisions for the support and education

of the child have been made and if "the interest of the child will not be prejudiced by dismissal." (38-1105) The former bastardy statute contained similar provisions with the exception of the last quoted phrase. Considering this last quoted phrase, if the contention of the appellee is correct it would seem nearly impossible for a judge in such an action to make the required finding under 38-1105, *i. e.,* "the interest of the child will not be prejudiced by dismissal." Assuming *arguendo* an action by the mother is dismissed with prejudice prior to judgment there would be no determination of paternity. Without such a determination of paternity the illegitimate child could never establish his right to support since it would depend on an adjudication of paternity. Prejudice to any later action for support by the child would most certainly result from such a dismissal.

The reasoning of the court set forth in *Doughty v. Engler,* supra, is equally appropriate under conditions which prevail today. Mr. Justice Mason, speaking for the court in *Doughty,* states:

"A sufficient reason for holding parents to be under a legal obligation, apart from any statute to support their legitimate child while it is too young to care for itself, is that the liability ought to attach as a part of their responsibility for having brought it into being. If that reason is not found convincing, it would be useless to seek others. And it does not in the least depend for its force upon the fact that the parents were married to each other, but is equally persuasive where that is not the case. . . .

"We do not think the legislature should be regarded as intending to relieve the father from this obligation to the child by the enactment of the statute above referred to, which authorizes the mother of an illegitimate child, if she sees fit, to maintain an action for her benefit in the name of the state against the putative father, and provides for the enforcement of a judgment by imprisonment. (Gen. Stat. 1915, ch. 50.) It would obviously be inadequate to cover the entire field of paternal liability, since the mother might not care to institute such a proceeding, or might die without instituting it. The measure is one providing machinery for the enforcement of a duty already existing rather than one creating a new obligation. Parental liability for the support of legitimate children did not originate with the statute of 1911. (Gen. Stat. 1915, §§ 3410-16) imposing punishment for a default in that respect. . . ." (112 Kan. pp. 585, 586.)

To determine legislative intent in order to properly construe changes in a statute this court must examine existing conditions, causes which impelled the enactment and the object sought to be obtained. (*Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670,

674, 675, 63 P. 2d 165; *Perkins v. Lenora Rural High School*, 171 Kan. 727, 731, 237 P. 2d 228.)

After considering these matters in the light of the present amendments to the law it seems apparent that the legislative purpose behind the new law was to change the criminal nature of the bastardy proceeding and make it a civil action. The putative father is no longer subject to arrest on a warrant issued on the complaint of the mother of the child. The putative father is no longer bound over for trial and the judgment for support is no longer enforced by commitment to jail for up to one year. However, the action retains all other key factors which previously distinguished the statutory from the non-statutory action. The statutory action still must be brought by the mother. It is brought in the name of the state on the relation of the complaining witness. The provision for medical expenses, support and education of the child is for the benefit of the mother. If the action is not filed while the mother is living the action does not survive. The change in terminology in the limitation section of the new law would seem to have become necessary solely by reason of the deletion of the criminal features of the old law.

We therefore hold that the limitation for instituting paternity proceedings contained in K. S. A. [Weeks] 38-1104 relates to the mother's statutory action and does not limit the time in which an illegitimate child may bring the non-statutory action recognized in *Doughty v. Engler*, supra.

The additional points raised by the appellants relating to retroactivity of the statute and to equal protection of the laws under the constitutions become academic after our decision on the primary question. (See *Kendig v. Kretsinger*, 197 Kan. 186, 415 P. 2d 250.) Accordingly the orders of the district court dismissing the actions are reversed and the cases are remanded for further proceedings.