No. 48,531

STATE OF KANSAS, *ex rel.* KATY MARIE WINGARD, *Appellant and Cross-Appellee,* v. ALFRED EUGENE SILL, *Appellee and Cross-Appellant.*

(576 P.2d 620)

Opinion filed April 1, 1978.

*Gary Jarchow,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Keith E. Martin,* assistant district attorney, were with him on the brief for the appellant and cross-appellee.

*Steven C. Sherwood,* of Wichita, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

OWSLEY, J.: This is an action brought by the relatrix, Katy Marie Wingard (now Katy Marie Rotramel), to determine the paternity of her son, Paul Jason Wingard. Although Alfred Eugene Sill was found to be the father, plaintiff appeals because the district court (1) found K.S.A. 38-1106 to be unconstitutional and (2) allowed the father visitation rights with the child. Defendant cross-appeals contending the district court erred in (1) not declaring all of the paternity statute to be unconstitutional, (2) denying defendant a jury trial, and (3) ordering that defendant pay child support.

We first deal with the constitutional issues. The district court

found K.S.A. 38-1106 unconstitutional under the equal protection clause because it treated unmarried fathers differently than married fathers. For the reasons set forth herein we disagree with the district court's conclusion.

K.S.A. 38-1106 states:

"Upon adjudging that the defendant is the father of the child whose paternity is in issue, the court shall make an appropriate order requiring the defendant to provide for the support and education of the child and the payment of the mother's necessary medical expenses incident to the birth of the child. The judgment shall specify the terms of payment and may require the defendant to provide a bond with sureties to secure such payment. If the defendant fails or refuses to make the payment or to supply the bond required by the judgment he may be adjudged in contempt of court and punished accordingly. The court may at any time during the minority of the child modify or change any such order of support as the interest of the child may require."

K.S.A. 60-1610(a) states:

"(a) *Care of minor children.* The court shall make provisions for the custody, support and education of the minor children, and may modify or change any order in connection therewith at any time, . . ."

The equal protection clause of the state and federal Constitutions prohibits disparity in treatment by the state between classes of persons who are arguably indistinguishable. (*State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 [1978]; *Ross v. Moffit,* 417 U.S. 600, 41 L.Ed.2d 341, 94 S.Ct. 2437 [1974].) This does not mean that all persons must be treated identically, but that they must be treated substantially similar in the same circumstances. The classifications created by the state are not required to be mathematically precise and may be somewhat imperfect (*Village of Belle Terre v. Boraas,* 416 U.S. 1, 39 L.Ed.2d 797, 94 S.Ct. 1536 [1974]; *Dandridge v. Williams,* 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153, reh. denied 398 U.S. 914, 26 L.Ed.2d 80, 90 S.Ct. 1684 [1970]), as long as they bear some reasonable relationship to the purpose to be achieved by the legislation. (*State ex rel. Schneider v. Liggett,* supra; *McGowan v. Maryland,* 366 U.S. 420, 6 L.Ed.2d 393, 81 S.Ct. 1101 [1961].)

It must be remembered that a statute is cloaked with a presumption of constitutionality and that cloak remains unless the right infringed upon is "fundamental" or subject to a "suspect classification." (*State ex rel. Schneider v. Liggett,* supra.)

The district court held K.S.A. 38-1106 unconstitutional because

it placed a greater duty of support upon unmarried fathers with children than upon married fathers. We do not agree. K.S.A. 38-1106 requires the court to make an "appropriate order requiring the defendant to provide for the support and education of the child." K.S.A. 60-1610(a) requires the court to make provisions for the custody, support and education of the minor children. In each case it has been the practice of the courts of this state to enter an order for support, taking into consideration the needs of the child or children and the financial ability of the father to contribute to the support of his offspring. Nothing contained in K.S.A. 38-1106 requires the putative father of an illegitimate child to give that child greater support because it is illegitimate than he would be required to give under the same financial circumstances if the child were legitimate.

Defendant attacks the provision of K.S.A. 38-1106 requiring the putative father to pay medical expenses as violative of the equal protection clause because divorced fathers are not required to do the same under K.S.A. 60-1610(a). First, we see no difference in the responsibility imposed by 38-1106 on an unmarried father from that imposed on a married father. K.S.A. 38-1106 makes the unmarried father responsible for medical expenses for which the married father is already liable by virtue of his status as a husband and the child's father. Even if this were not the case the equal protection clause is not violated. The state may lawfully treat persons differently if there is a valid legislative reason for doing so. (*State ex rel. Schneider v. Liggett,* supra.) In this case the difference in treatment is valid. In *Quilloin v. Walcott,* ____ U.S. ____ [Slip Opinion No. 76-6372, decided Jan. 10, 1978], 54 L.Ed.2d 511, 98 S.Ct. 549, the Court approved the differentiation between married and unmarried fathers, stating:

"Appellant contends that even if he is not entitled to prevail as a matter of due process, principles of equal protection require that his authority to veto an adoption be measured by the same standard that would have been applied to a married father. In particular, appellant asserts that his interests are indistinguishable from those of a married father who is separated or divorced from the mother and is no longer living with his child, and therefore the State acted impermissibly in treating his case differently. We think appellant's interests are readily distinguishable from those of a divorced father, and accordingly believe that the State could permissibly give appellant less veto authority than it provides to a married father." (p. ____)

The purpose of the paternity statute is to attempt to place the

illegitimate child and its mother on par with the legitimate child and its mother. This court well knows that oftentimes the father of an illegitimate child disappears long before the child is born and makes no attempt to aid the mother until the judicial system intervenes. Although the putative father may have a moral obligation to support the child, legal responsibility does not arise until paternity is adjudicated. On the other hand, the married father is usually not only present at the time of birth to aid the mother, but is also legally known to be the person responsible for the support and welfare of the child and at least jointly responsible for the mother's medical expenses. For this reason we find K.S.A. 38-1106 to be constitutional.

Defendant asks us to strike down all of the paternity statute (K.S.A. 38-1101, *et seq.*), raising equal protection arguments similar to those we have just considered. In light of our determination that the statute is intended to require the father of an illegitimate child to support his child in the same manner as a legitimate father, we see nothing improper with the statute and hold that it has a reasonable relationship to the legislative purpose of requiring the father of a child to support that child in accordance with the needs of the child and the father's financial ability.

Defendant also argues the statute is unconstitutional because it places a greater burden of support and responsibility upon him than upon the mother. We see no merit in his argument. The mother of the child and the defendant are in different positions due to obvious biological factors. The mother bore the burden of carrying the child until birth and after that time was left with the responsibility of raising the child. Although the statute requires the father to give support for the child, it does not lift the same responsibility from the mother who assumed the role of supporting the child long before the father was required by the district court's order to support the child. The sex discrimination cases cited by defendant do not apply.

After the district court found defendant to be the father of the child and entered a support order, defendant moved the court to establish reasonable visitation. The court granted visitation without a hearing. Plaintiff argues the district court erred.

Whether the father of an illegitimate child has a right to reasonable visitation is an issue of first impression in this juris-

diction. Those jurisdictions considering the issue have overwhelmingly concluded that a father has a right to visitation if it is in the best interest of the child. (*Bagwell v. Powell,* 267 Ala. 19, 22, 99 So. 2d 195 [1957]; *Strong v. Owens,* 91 Cal. App. 2d 336, 341, 205 P.2d 48 [1949]; *Forestiere v. Doyle,* 30 Conn. Supp. 284, 310 A.2d 607, 609 [1973]; *In Re One Minor Child,* 295 A.2d 727 [Del. 1972]; *Mixon v. Mize,* 198 So. 2d 373, 375, cert. denied 204 So. 2d 211 [Fla. App. 1967]; *People ex rel. Vallera v. Rivera,* 39 Ill. App. 3d 775, 351 N.E.2d 391 [1976]; *Taylor v. Taylor,* 295 So. 2d 494, 496, cert. denied 299 So. 2d 799 [La. App. 1974]; *Gardner v. Rothman,* _____ Mass. _____, [A.S. 922, decided April 6, 1976], 345 N.E.2d 370; *Turner v. Saka,* 90 Nev. 54, 60, 518 P.2d 608 [1974]; *Baker v. Baker,* 81 N.J. Eq. 135, 85 A. 816 [1913]; *People ex rel. "Francois" v. "Ivanova,"* 14 A.D.2d 317, 221 N.Y.S.2d 75 [1961]; *Ex Parte Hendrix,* 186 Okla. 712, 713, 100 P.2d 444 [1940]; *Gwiszcz Appeal,* 206 Pa. Super. 397, 213 A.2d 155, 15 A.L.R.3d 880 [1965]; *In re Guardianship of Harp,* 6 Wash. App. 701, 706, 495 P.2d 1059 [1972]; *Slawek v. Stroh,* 62 Wis. 2d 295, 304, 215 N.W.2d 9 [1974]. But see, *In Re Connolly,* 43 Ohio App. 2d 38, 332 N.E.2d 376 [1974] [father cannot see child unless he has permission of the mother, or unless he can clearly establish it is in the best interest of the child].)

Visitation is not automatic. Because the power to grant or deny visitation is bottomed upon jurisdiction to provide for custody of a child (K.S.A. 60-1610[*a*]; *Donaldson v. Donaldson,* 198 Kan. 111, 113, 422 P.2d 871 [1967]; *Lillis v. Lillis,* 1 Kan. App. 2d 164, 166, 563 P.2d 492 [1977]), the paramount concern is the welfare of the child. (*Bergen v. Bergen,* 195 Kan. 103, 403 P.2d 125 [1965]; *Lyerla v. Lyerla,* 195 Kan. 259, 403 P.2d 989 [1965].) However, a fit and proper parent is entitled to have access to and at reasonable times visit and be visited by a child who is in the custody of the other parent. (*Miracle v. Miracle,* 208 Kan. 168, 180, 490 P.2d 638 [1971].) This should hold true for the father of an illegitimate child as well as any other noncustodial parent. The day is gone when the putative father has no parental rights under the law. (See, *Stanley v. Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 [1972]; *In re Lathrop,* 2 Kan. App. 2d 90, 575 P.2d 894 [1978].)

While cases such as *Stanley v. Illinois,* supra, have eliminated most of the legal restrictions placed upon the illegitimate rela-

tionship, this does not deny the consideration of valid factual differences between the father of an illegitimate child seeking visitation and that of the divorced father. (*Quilloin v. Walcott,* supra.) We feel the trial court must consider such relevant factors as (1) the duration and nature of the relationship between the mother and father of the illegitimate child (*Matter of Pierce v. Yerkovich,* 80 Misc. 2d 613, 363 N.Y.S.2d 403 [1974] [mother and father lived together for over three years—visitation allowed]; *E.R. v. D.T.,* 77 Misc. 2d 242, 353 N.Y.S.2d 612 [1974] [child conceived when thirteen-year-old mother raped by sixty-one-year-old father—visitation denied]); (2) the interest shown by the father in the child's life (*Matter of Pierce v. Yerkovich,* supra [child lived with both parents until she was almost three years old—visitation allowed]; *In re Lathrop,* supra [father's right to child cannot be severed when he is involuntarily kept away from child]); (3) whether paternity is admitted by father or is judicially established (*People ex rel. Vallera v. Rivera,* supra at 778; *Gardner v. Rothman,* supra); (4) whether the father has contributed support to the child (*Bagwell v. Powell,* supra; *Baker v. Baker,* supra; *Matter of Pierce v. Yerkovich,* supra [father established a $59,000 irrevocable trust for the child]; *Matter of Anonymous,* 12 Misc. 2d 211, 172 N.Y.S.2d 186 [1958]); and (5) the emotional effect the visits would have on the child (*People ex rel. Heller v. Heller,* 184 Misc. 709, 54 N.Y.S.2d 734 [1945]).

We caution that these guidelines are by no means exhaustive, but only illustrative of the consideration necessary on the issue. The governing criterion should always be the best interest of the child, and not the preferences or prejudices of the parents. Should it appear after visitation privileges have been granted that the father has used them for vexatious purposes, or has had an adverse effect on the child by his presence, the right to visit may be withdrawn.

Every case must be decided on its individual facts. The unique problems of each child must receive individual attention and consideration. Any attempt by this court to determine the best interest of every child by a single rule would be folly. We reverse the decision of the trial court on this issue and remand for a hearing on the issue of visitation in accordance with the guidelines set forth herein.

Defendant argues he was denied a right to trial by jury, citing

cases from other jurisdictions which hold that the right exists in paternity proceedings. In *State, ex rel., v. Herbert,* 96 Kan. 490, 152 Pac. 667 (1915), this court held that the right to jury trial did not exist in a bastardy action. We have examined the authorities cited by defendant and find no reason to deviate from our decision in *Herbert.*

The last issue concerns the right of the trial court to enter a support order after declaring K.S.A. 38-1106 unconstitutional. In light of our decision that the trial court erred in striking down 38-1106, discussion of this issue is moot.

Plaintiff's appeal is reversed and remanded with directions and defendant's cross-appeal is denied.