LANIER, Judge.
This matter commenced as a rule by the mother of an illegitimate minor child against the child’s natural father for child support payments. In response to this rule, the natural father filed a rule seeking custody of the child and, in the alternative, reasonable visitation rights. The trial court rendered judgment maintaining the custody of the child with her mother and granted specific visitation privileges to the natural father. Subsequently, the trial court awarded the mother the sum of $200.00 per month for support of the child. The natural father took this devolutive appeal asserting that the trial court judgment maintaining custody of the child with her mother was in error.[1]
Beanner Louise DeBlieux, born October 17,1976, is the child of Beatrice Walton and Henry L. DeBlieux. The child was born while DeBlieux was lawfully married to a person other than Beatrice Walton, but he has judicially admitted paternity. Beatrice Walton was first married to Allen E. Austin and one child, a son who is now nineteen years of age and married, was born of that union. This marriage ended in divorce. Beatrice Walton purportedly married a second time to George G. Folks and two sons were born of that union, namely, Carl D. Folks, age seventeen, and Michael P. Folks, age fifteen. The relationship between Walton and Folks ended when Folks obtained an annulment of the marriage because it occurred prior to the time that Walton was finally divorced from Austin. Folks has since died and Carl D. Folks has moved out of his mother’s home.
At the time of the hearing, Beatrice Walton was living with Michael P. Folks and Beanner L. DeBlieux in a two bedroom trailer which she had converted into a three bedroom trailer. Walton was unemployed, but testified that she recently worked for a short time as a waitress. She quit because she did not have regular transportation and the restaurant was too far away. Her only income was $607.20 per month that she received from Social Security benefits for the two sons of George Folks. (She subsequently was granted $200.00 per month child support by the trial court). The trial judge, in her reasons for judgment, made the following findings of fact:
“The record shows since birth the child has been in the custody of her mother and since the plaintiff and defendant ceased their relationship, the father’s visits have been on an occasional basis. The father has, however, voluntarily contributed to the support of his daughter. “The record also shows the mother engaged in open concubinage for approximately three months with her children present. She has continued, after moving from her lover’s abode, to engage in sexu *939 al activity with her lover, either at her home or at his home during overnight visits. The children were present although in other rooms when her lover and she spent the night in her home. She further stated that the reason that she moved from her lover’s home was because the father was trying to obtain custody, but she did not feel it morally right to stay with her lover instead of her children.
“The record further shows that she would leave her daughter in the care of her fifteen year old son when she went out in the evenings, whether it be for a few hours or until morning. On each occasion when she would return in the morning she would fix breakfast and see that the children were dressed and ready for school.
“The record further shows Mrs. Walton took her children to church regularly and that Beanner liked Mrs. Walton’s lover. “The economic stability of both parties is presently unstable, although the physical structure of the home of Mr. DeBlieux appears to the Court to offer a better environment.
“Mrs. DeBlieux, wife of Mr. DeBlieux since 1956, testified she was willing to help in the raising of her husband’s child by another woman. Her testimony showed that she and her husband had been separated from August of 1981 until April, 1982, shortly before this hearing. She testified the main reason was late nocturnal calls from Mrs. Beatrice Walton, sometimes in an apparently intoxicated condition concerning her children. “Mr. DeBlieux testified that he had seen defendant-in-rule snatch one of her children by the hair, feed them hot peppers when they would not eat their meals and drink excessively around her children. He further stated that he began his relationship with defendant-in-rule in 1972 and continued the same until 1981. Shortly thereafter he lived with a woman named Ann Meyers for a period of months and would bring Beanner to their home on occasion.
“The record further shows Mr. DeBlieux had given Mrs. Walton and his daughter a television, washing machine, high chair, stove and refrigerator. These items were removed by Mr. DeBlieux during an apparently violent altercation. He did, however, return the television and washing machine.”
The trial judge allowed the custody of the child to remain with her mother under the belief that “it would be traumatic to change custody of the five and a half year old child and place her in an environment veritably unknown to her.”
The principal consideration in every child custody case is the best interest and welfare of the child. Bagents v. Bagents, 419 So.2d 460 (La.1982). The criteria applicable in determining the custody of legitimate children are also applicable in determining the custody of illegitimate children. Neal v. White, 362 So.2d 1148 (La.App. 2nd Cir.1978), writ denied 365 So.2d 243 (La.1978). To determine what is in the best interest of a child, the court should consider the totality of all circumstances including, but not limited to, the moral and physical environments of the parties, the stability of those environments, and the past misconduct, if any, of the parties. Monsour v. Monsour, 347 So.2d 203 (La.1977); Primm v. Primm, 409 So.2d 1288 (La.App. 2nd Cir.1982); Camelo v. Camelo, 402 So.2d 174 (La.App. 1st Cir.1981). A trial court is vested with much discretion in performing its function of deciding child custody cases. The determination of the trial court in child custody matters is entitled to great weight and will not be disturbed on appeal unless a clear showing of abuse of discretion is made. Stephenson v. Stephenson, 404 So.2d 963 (La.1981); Bordelon v. Bordelon, 390 So.2d 1325 (La.1980).
The evidence shows that neither the mother nor the natural father is a model of morality. The parties maintained an adulterous relationship for many years. When they broke up, the natural father started seeing another woman, although he was still lawfully married. The mother began living with another man. The trial court *940 found that both parties were economically unstable and that the physical structure of the DeBlieux home offered a better environment. To overcome these problems, the trial judge wisely made the mother’s continued custody contingent on three conditions: (1) that she refrain from sexual activity in the same structure or immediate vicinity of the child; (2) that she have a responsible person eighteen years of age or older babysit for the child in her absence; and (3) that she refrain from other conduct detrimental to the child.
The evidence is uncontradicted in the record that the child is polite, well adjusted and happy in her present environment. Because of this fact and because the trial court conditioned the mother’s continued custody upon the terms set forth above, we conclude after reviewing all other circumstances that the trial judge did not abuse the much discretion accorded her under the law.
For the foregoing reasons, the judgment of the trial court is affirmed at the appellant’s costs.
AFFIRMED.

. In this appeal, no complaint has been made about the judgments granting specific visitation privileges and child support.