No. 53,819

VENDAL CARTY, *Appellee,* v. KIMBERLY KELLY MARTIN, *Appellant.*

(660 P.2d 540)

Opinion filed March 26, 1983.

*Richard White,* legal intern, argued the cause and *James J. O'Malley,* legal intern, *Cindy L. Whitton,* legal intern, *Christine A. Long,* supervising attorney, and *Karen Borell,* supervising attorney, all of Douglas County Legal Aid Society, Inc., of Lawrence, were with him on the brief for the appellant.

*E. Roger Horsky,* of Leavenworth, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an action in which an unwed father seeks an adjudication of paternity and enforcement of his right to visit his child. Kimberly Martin appeals from the trial court's order adjudicating Vendal Carty the father of her son, Adam Martin, granting Carty visitation rights and ordering him to pay $40 per month child support.

Vendal Carty and Kimberly Martin met in January of 1976. Carty was in the army stationed at Ft. Leavenworth. Ms. Martin was a student at Kansas University. He was age 29 and had been previously married with one child. She was age 17 and had never been married. The two became friends, then lovers, and during the fall of 1976 Ms. Martin became pregnant. When Ms. Martin discovered her pregnancy, she planned to drop out of college at

the end of the semester and marry Carty. Her plans failed to materialize due to what she claims was Carty's reluctance. Carty contends it was the other way around. Nevertheless, Adam Martin was born out of wedlock in April of 1977. Carty refused to sign the birth certificate even though he acknowledged paternity. The medical expenses of the birth were paid by Ms. Martin's father's military benefits.

After the birth of Adam the parties continued to see each other irregularly. Carty, however, never paid child support. In June of 1978, Carty informed Ms. Martin he was going to marry another woman whom he had also gotten pregnant. The marriage occurred in July of 1978. In November of 1979, Mr. Carty was transferred to Texas where he was stationed for a few months. He returned to Kansas temporarily in February of 1980. While here he requested permission to see Adam but appellant refused.

In May of 1980, Carty returned to Kansas permanently. This time appellant agreed to permit Carty to visit their son on a regular basis during the summer. Before long the informal visitation arrangements fell through. On September 15, 1980, Mr. Carty filed this suit asking for a judicial determination of his paternity of Adam Martin and an order granting him custody or in the alternative visitation rights to the child. Ms. Martin responded to Carty's suit by stating she was without sufficient information to answer the paternity averment. She then alleged Carty failed to state a claim upon which relief could be granted and that he was guilty of laches. In the alternative she asked for support.

After a trial where the parties acknowledged Carty was the father of Adam Martin, the trial court concluded:

"The custody of the child should remain in the mother. The realities of this situation are that the plaintiff is clearly the father of the child, Adam, and has turned to the Courts only when the informal arrangements for visitation began to decay.

"The Kansas Legislature has not addressed the rights of a father under these circumstances, but in 1978 the Kansas Supreme Court in a case of first impression found the father of an illegitimate child had the right to reasonable visitation if it is in the best interests of the child. This visitation is not automatic and once granted may be withdrawn if the father uses it for vexatious purposes. The Court noted that while a putative father is no longer without parental rights under the law, there are valid factual differences between the father of an illegitimate child and a divorced father. Some of the factors to be considered regarding the issues of visitation are the duration and nature of the relationship between the father and

mother, the interest shown by the father, the admission of paternity, support paid, and the emotional effect the visits would have on the child."

After an in-depth home study of the effect on the child of permitting visitation, the court granted Carty visitation rights and ordered him to pay $40 per month child support. This appeal followed.

Appellant argues the trial court's order was erroneous because Mr. Carty was without authority to bring an action to establish paternity.

Kansas has traditionally offered only two proceedings in which the paternity of an illegitimate child could be legally determined. The first is a statutory action available only to the mother. It was previously governed by the "bastardy" statute, K.S.A. 62-2301 (Corrick), and had to be brought in the name of the State of Kansas. Although it was a civil action it had features of a criminal prosecution. Effective July 1, 1970, the legislature repealed the bastardy statute and enacted the present statutes governing "paternity proceedings." K.S.A. 38-1101 *et seq.* The major changes in the new act were provisions limiting the cause of action to one year after the birth of the child (K.S.A. 38-1104) and the characterization of the proceedings as civil rather than criminal. See *Huss v. DeMott,* 215 Kan. 450, 524 P.2d 743 (1974).

The second proceeding is a nonstatutory action to determine paternity brought in the name of the child. The action, first recognized by this court in *Doughty v. Engler,* 112 Kan. 583, 585, 211 Pac. 619 (1923), is a chose vested in the child. *Lawrence v. Boyd,* 207 Kan. 776, 486 P.2d 1394 (1971). The purpose of the nonstatutory action is to force the putative father to support the child. This action can be initiated on behalf of the child by a guardian or next friend and is not subject to a limitation on time for filing. *Huss v. DeMott,* 215 Kan. at 455.

As appellant correctly notes, there is no statutory or common-law action available to the putative father of an illegitimate child to have paternity adjudicated. Such a restriction on the father was acceptable when bastardy and illegitimacy were considered disgraceful, casting adverse reflections on all the concerned parties. However, the mores and folkways have changed. Illegitimacy is no longer considered a disgrace, with the unwed father often desirous of accepting paternal responsibilities. This change was reflected by the U.S. Supreme Court in *Caban v.*

*Mohammed,* 441 U.S. 380, 60 L.Ed.2d 297, 99 S.Ct. 1760 (1979); and *Stanley v. Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972). In *Caban* the court recognized a difference in maternal and paternal roles prior to and at birth but found the differences diminish as time passes "where the father has established a substantial relationship with the child and has admitted his paternity." 441 U.S. at 393. In *Stanley* the court recognized the rights of an unwed father whose custody of his children was challenged after the mother's death, holding he was denied due process when he was not given a hearing such as afforded other parents whose custody was challenged.

This court has also recently dealt with the rights of unwed fathers. In *State ex rel. Wingard v. Sill,* 223 Kan. 661, 665, 576 P.2d 620 (1978), citing *Stanley v. Illinois,* 405 U.S. 645, we held an unwed father who is a fit and proper parent has a right to reasonable visitation after a district court has determined paternity. We further stated "legal responsibility does not arise until paternity is adjudicated." 223 Kan. at 664.

Thus, it is well established in Kansas the father of an illegitimate child is entitled to bring an action to enforce his right to visit that child. In order to enforce this right, however, he must show he is, in fact, the child's father. Appellant argues that since Kansas has not yet recognized a procedure by which a putative father can bring an action to determine paternity, Mr. Carty's petition failed to state a claim upon which relief could be granted.

Appellant's argument fails to recognize one salient point. In the instant case the paternity of Adam Martin was long ago acknowledged by both parties. In fact, Carty was for a time accorded visitation privileges. The idea that paternity can be established by acknowledgement of the parties is not a new or novel principal. For example, the legislature has recognized it in K.S.A. 59-501 which states an illegitimate child can inherit from the father "where the father has notoriously or in writing recognized his paternity of the child." Other courts have also discussed the issue. In *Levy v. State, Char. Hosp. of La. At N. Orleans Bd. of Ad.,* 253 La. 73, 80, 216 So. 2d 818 (1968), the court held, "when a parent openly and publicly recognizes and accepts an illegitimate to be his or her child" the child is considered to be a "child" within the meaning of the Louisiana

wrongful death statute. More to the point is *Gardner v. Rothman,* 370 Mass. 79, 82, 345 N.E.2d 370 (1976), where the court held when paternity is conceded an adjudication of paternity is not essential before visitation rights may be granted to the father of an illegitimate child. Thus, Carty properly invoked the jurisdiction of the district court to determine his rights regarding visitation of his son.

Our conclusion is the product of both legal authority, as set out in *Stanley* and *Wingard,* and practical considerations, as evidenced by the specific facts of this case. We hold once paternity is established, whether by adjudication or acknowledgement, the unwed father, absent unfitness. and subject to the best interests of the child, has a right to visitation with respect to that child. Further, he is entitled, when necessary, to bring an action without time limitations to enforce this right. The question of whether an unwed father, where paternity is disputed, may bring an action to establish his paternity in the first instance is another matter. Certainly there is a strong argument that without such a remedy he would be unable to enforce his right to visitation. However, since such a determination is more appropriately made in the legislature, and since the facts of this case do not require it, we need not reach this issue.

The only remaining question is whether the trial court erred in granting Mr. Carty's request for visitation and setting a monthly figure for child support. A court should not automatically award a putative father visitation rights but should first consider relevant factors including: (1) the duration and nature of the relationship between the mother and father of the illegitimate child; (2) the interest shown by the father in the child's life; (3) whether paternity is admitted by the father or judicially established; (4) whether the father has contributed support to the child; and (5) the emotional effect the visits would have on the child. This is not an exhaustive list of considerations. The circumstances of each individual case should be examined in light of all relevant factors. See *State ex rel. Wingard v. Sill,* 223 Kan. at 665-66.

Issues regarding custody and control of children are addressed to the sound discretion of the trial court, as is the determination of child support. *Simmons v. Simmons,* 223 Kan. 639, 643, 576 P.2d 589 (1978); *Thompson v. Thompson,* 205 Kan. 630, 631, 470 P.2d 787 (1970). The record shows the trial court carefully

considered all relevant circumstances before making its order. We find no abuse of discretion.

The judgment of the trial court is affirmed.