238 Kan. 630 (1986)
713 P.2d 474
NIKISHA NICOLE La GRONE, ANDREA RENEA BRIDGER, Minor Children, by Their Next Friend and Mother, SHERRIE LYNN BRIDGER, Appellant,
v.
FREDERICK BERNARD La GRONE, Appellee.
No. 57,984
Supreme Court of Kansas.
Opinion filed February 4, 1986.
Bruce J. Gluckman, of Wyandotte-Leavenworth County Legal Aid Society, argued the cause, and Luis Mata, of the same office, was with him on the brief for appellant.
There was no appearance for the appellee.
The opinion of the court was delivered by
MILLER, J.:
Sherrie Lynn Bridger, the mother of two minor children, Nikisha and Andrea, brought this common-law paternity action in the name of her minor children. She sought a determination by the trial court that the defendant, Frederick LaGrone, is the father of both children. She also sought custody of the children and child support. After trial, the Wyandotte County District Court judge found that Frederick was the father of both children. He placed Andrea in Sherrie's custody and required Frederick to pay $300 per month as child support. He placed Nikisha in Frederick's custody. He also made specific provisions for visitation. The mother appeals from that portion of the trial court's order awarding the father the custody of Nikisha.
Most of the facts are undisputed. Sherrie and Frederick commenced living together in 1981. Nikisha was born the following year, and Frederick has always acknowledged that he is her father. In late 1982, Sherrie again became pregnant. Frederick denied from the first that he was the father of Sherrie's expected *631 child. He offered to pay for an abortion but Sherrie did not want an abortion. In May or June of 1983, she moved out of the home where she and Frederick lived. Andrea was born in August.
The evidence was that both parents are fit, both love their children and both take good care of them. Sherrie has had almost the complete care and custody of Andrea since her birth. Frederick testified that Nikisha had lived with him for approximately twenty months prior to the time this case was tried. Sherrie, on the other hand, testified that she cared for Nikisha during the days and Frederick took care of her at night. Frederick is in the Navy and was transferred to San Diego a few weeks before trial. He flew home for the hearing, bringing Nikisha with him.
The first issue is whether the father of an illegitimate child can seek custody of the child. The 1985 Legislature passed the Kansas parentage act. L. 1985, ch. 114, §§ 1-20. The act provides for a procedure to be followed in determining the paternity of the child, and section 12 of the act authorizes the court to enter sufficient orders regarding custody as the court considers to be in the best interests of the child. That act, however, did not become effective until after the trial of this case, and we find nothing in the act to suggest that it should be applied retroactively.
We note that in this case the mother asked the court to award to her the custody of both children. When the matter came on for trial, counsel announced that custody was an issue and that this would be "a custody fight." The matter was fully tried, with both parties presenting evidence.
In State ex rel. Wingard v. Sill, 223 Kan. 661, 576 P.2d 620 (1978), we held that while the right to visitation is not automatic, the father of an illegitimate child, like any other parent if fit and proper, is entitled to have access to and at reasonable times visit and be visited by a child who is in the custody of the other parent. We said, "The day is gone when the putative father has no parental rights under the law." 223 Kan. at 665. More recently in Carty v. Martin, 233 Kan. 7, 660 P.2d 540 (1983), in an action commenced by the father to establish paternity and visitation rights to an illegitimate child, we held that the trial court did not err in granting visitation privileges to the father and in awarding child support to the mother with whom the child was domiciled.
We have repeatedly said that the most important factor to consider in determining which parent should be granted custody *632 is what will serve the best interests and welfare of the child. All other considerations are secondary. See, for example, Burnworth v. Hughes, 234 Kan. 69, Syl. ¶ 1, 670 P.2d 917 (1983); Simmons v. Simmons, 223 Kan. 639, 642, 576 P.2d 589 (1978); Hardenburger v. Hardenburger, 216 Kan. 322, Syl. ¶ 2, 532 P.2d 1106 (1975).
This principle has been applied by the courts of other states in deciding the custody issue as between unwed parents. In Cox v. Hendricks, 208 Neb. 23, 302 N.W.2d 35 (1981), the Nebraska Supreme Court stated:
"In a paternity action where paternity has been admitted and the natural father has demonstrated a familial relationship with the child and has fulfilled parental responsibilities of support and maintenance, the fact that the child was born out of wedlock should be disregarded, and custody and visitation of minor children should be determined on the basis of the best interests of the children." (Emphasis supplied.) 208 Neb. at 28.
Also, in Heyer v. Peterson, 307 N.W.2d 1 (Iowa 1981), the Iowa Supreme Court stated:
"When the issue of custody arises from the competing claims of unwed parents, we do not believe the critical issue to be which parent possesses the greater right to the child. Rather, we conclude that in a custody contest of this nature, the controlling consideration must be the interests of the child. See § 675.31, The Code 1979 (The court has continuing jurisdiction `to determine ... custody in accordance with the interests of the child.') (emphasis added). This profound decision involves selecting as the custodial parent the person who can minister more effectively to the long-range best interests of the child. The objective ought always to be to place the child in the environment most likely to bring that child to healthy physical, mental and social maturity.
....
"We believe the criteria for determining custody should be the same whether the parents are dissolving their marriage or are unwed." (Emphasis supplied.) 307 N.W.2d at 7.
See also Pi v. Delta, 175 Conn. 527, 400 A.2d 709 (1978); Bazemore v. Davis, 394 A.2d 1377 (D.C. 1978); Matter of Custody of Bourey, 127 Ill. App.3d 530, 82 Ill. Dec. 852, 469 N.E.2d 386 (1984); People ex rel. Elmore v. Elmore, 46 Ill. App.3d 504, 5 Ill. Dec. 292, 361 N.E.2d 615 (1977); Walton as Tutrix of Deblieux v. Deblieux, 428 So.2d 937 (La. App. 1983); Smith v. Watson, 425 So.2d 1030 (Miss. 1983); In re Byrd, 66 Ohio St.2d 334, 421 N.E.2d 1284 (1981).
We conclude that an unwed parent, whether mother or father, should be treated the same as any other parent for the purpose of determining custody. The custody issue must be decided on the *633 same criteria  primarily, the best interests of the child  regardless of the marital status of the parents. We conclude that the father of an illegitimate child may seek custody of the child in our courts and that such parent could do so even prior to the enactment of the Kansas parentage act.
Finally, the mother argues that the trial court erred in ordering divided custody.
K.S.A. 60-1610(a)(3)(B) lists several of the relevant factors that a court must consider in determining the issue of custody. The enumerated facts, however, are not exclusive. The court is directed to consider "all relevant factors, including but not limited to" those listed. One factor which the court might properly consider is certainly which parent has had the actual care and custody of the child during the child's lifetime.
Section 1610(a)(4)(A), (B), (C) and (D) lists the types of custodial arrangements which the court might consider. The first is joint custody, the second is sole custody, the third is divided custody, and the last is nonparental custody. These are listed in the order of preference. With regard to divided custody, the act states: "In an exceptional case, the court may divide the custody of two or more children between the parties."
Sherrie argues that the court erred in ordering this form of custody. She points out that sole custody of both children is preferred to divided custody, and that divided custody may be ordered only in exceptional cases. The statute does not define what an exceptional case is, nor does it give examples. The facts before the trial court in this case were unusual. Sherrie provided all of the care for Andrea and some care for Nikisha, with Frederick taking care of Nikisha when he was not on duty. This went on for some eighteen to twenty months prior to the hearing. Since Frederick is now stationed on the west coast, this arrangement is no longer possible. The trial court largely perpetuated the status quo, awarding custody along the lines followed by the natural parents of the children. As we have said many times, the trial court is in the best position to determine the needs and best interests of the children. Under the circumstances, we conclude that the trial court did not err in awarding the custody of Nikisha to her father.
The judgment is affirmed.
LOCKETT, J., concurring in part and dissenting in part:
I agree *634 with the majority's determination that an unwed parent, whether mother or father, should be treated the same as any other parent for the purpose of determining custody. I also agree that custody issues must be decided on the same basis  primarily, the best interests of the child  regardless of the marital status of the parents.
I must respectfully dissent from the majority's finding that the trial judge did not err by dividing the custody of the two minor children between the mother and father. The majority states: "Sherrie provided all of the care for Andrea and some care for Nikisha, with Frederick taking care of Nikisha when he was not on duty. This went on for some eighteen to twenty months prior to the hearing." The mother, Sherrie, testified to the following events:
1. In March 1981, she met Frederick. At the time she was 17 years old and attending high school.
2. In June 1981, they started to date.
3. In July 1981, she moved in with Frederick.
4. In May 1982, Nikisha was born.
5. In June 1983, after again becoming pregnant, she and Nikisha left Frederick and moved in with Frederick's mother.
6. In August 1983, Andrea was born.
7. During various times in 1983-84 each parent had custody of Nikisha. Several times during that period the parties lived together for a week or so, but did not consider themselves as husband and wife.
8. The past year the mother had the child during the day while the father was at work. During the night, the father kept the child while the mother worked. The parties shared custody during the weekends.
The legislature has stated factors that a court must consider in determining the issue of custody when granting a divorce or separate maintenance. The court may divide the custody of two or more children between the parties only in exceptional cases. K.S.A. 60-1610(a)(4)(A), (B), (C) and (D). Even though the parties were not seeking a divorce, the same consideration must be given when a court is dividing the custody of children of unwed parents.
Both parties testified that the relationship between the two children was quite good. The mother testified that the two *635 children loved each other, played together and got along well. The trial judge found that both parents were fit, both loved their daughter, Nikisha, and both took good care of her. Then, without finding any exceptional circumstances, the judge divided the custody of the children in such a manner that the two children would be together only two weeks each year. Both the trial court and the majority ignore the fact that there existed no exceptional circumstances which required the trial judge to divide the custody of the two sisters between the parents. The sole basis for the majority's affirmance is that the trial court "perpetuated the status quo." The status quo was created because the father had violated the trial court's temporary orders which awarded temporary custody of both daughters to the mother.
Where there are no exceptional circumstances, the children of divorced or unwed parents, especially those children of tender years, should not be separated by awarding custody of one child to the mother and custody of the other child to the father. Family ties between children of the same parents should not be treated lightly.
Since the father has never acknowledged he is the father of Andrea and has refused to pay the support ordered by the court, the trial judge properly awarded custody of Andrea to the mother. Without a finding of exceptional circumstances, the trial judge erred when he divided the custody of the two children.
The judgment of the lower court should be reversed.
HOLMES and HERD, JJ., join in the foregoing concurring and dissenting opinion.