CAROLYN M. FLEHARTY, APPELLEE, v. EDGAR C. FLEHARTY, APPELLANT.

274 N. W. 2d 871

Filed January 30, 1979. No. 41824.

Ronald J. Palagi, for appellant.

William C. Stanek, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

KUNS, Retired District Judge.

This is an action for dissolution of marriage brought by Carolyn M. Fleharty, petitioner-appellee, against Edgar C. Fleharty, respondent-appellant, in the District Court for Burt County, Nebraska. The decree, in part, awarded the custody of two minor children of the parties to the appellee. Appellant assigns error against this provision. We affirm the judgment.

Appellant argues that the award of custody is not supported either by the evidence or the law. The record shows that the parties were married in Lima, Ohio, on March 5, 1965. Two children were born to the marriage, a daughter, Tracy G., on July 3, 1970, and a son, Eric Todd, on August 11, 1973. The family moved to Nebraska in 1974. Suit for dissolution was filed in 1977. During the pendency thereof, the appellee returned to Ohio with her children, occupying an apartment in Beaverdam, Ohio, near other members of her family. She was receiving ADC at the time of trial, but was hopeful of securing employment. She described at length both her living arrangements and the provisions she had planned and made for the care of the children. When pressed on cross-examination, about having illicit relations and living with another man, she explicitly and unequivocally denied the charge. The appellant testifed that, if custody were granted to him, he would live with the children in the previous family home and that he would secure help from his mother and friends in caring for the children while he was at work. He said he was going to have the children

baptized and would attend church regularly. He planned to make special arrangements for education and tutoring of the children and also for therapy of their speech defects. He conceded that in May 1977, he wrote a letter to his children telling them that their mother was sleeping with another man and giving a bad impression of her as a woman and a mother.

Appellant also called a private investigator and a clinical psychologist. The investigator testified about his observations of the appellee in July 1977, when he saw her in company with another man at her apartment and concluded that they were living together. The psychologist testified he had administered tests to the appellant and considered him to be above average in stability for the purpose of exercising custody of the children. He also expressed an opinion, based upon hearing the testimony at the trial, that he had some question about the ability of the appellee to provide love and care for the children and to educate them.

Our attention has been directed both to the statutory provisions found in section 42-364, R. S. Supp., 1976, and to numerous statements of the law found in previous decisions of this court. There is no question but that the best interests of the children constitute the paramount consideraton in determining issues of custody. § 42-364, R. S. Supp., 1976; Boroff v. Boroff, 197 Neb. 641, 250 N. W. 2d 613; Broadstone v. Broadstone, 190 Neb. 299, 207 N. W. 2d 682. Section 42-364, R. S. Supp., 1976, further provides that the court in awarding custody of children shall not give any preference to either parent based upon the sex of such parent and that there is no presumption that either parent is more fit than the other to have custody. A comprehensive statement of the factors involved in determining the issue of custody is found in Christensen v. Christensen, 191 Neb. 355, 215 N. W. 2d 111: "The judgment concerning the custody of

children is necessarily quite subjective in nature. Many factors may be considered in light of the particular circumstances of each individual case. The general considerations of the moral fitness of the parents, of respective environments offered by each parent, the emotional relationship between the children and their parents, their age, sex, and health, the effect on the children of continuing or disrupting an existing relationship, the attitude and the stability of character of each parent, and the capacity to furnish the physical care and education and needs of the children are some of many factors for the court to consider. In evaluating the general concept of the best interests and welfare of the children it is settled and fundamental law that this court will give weight to the fact that the trial judge saw and observed the witnesses and the attitude of the parents at the trial."

The only point upon which the evidence is in conflict is the attack upon the moral conduct of the appellee. The trial court resolved this conflict in favor of the appellee. Each party introduced favorable opinions as to their fitness to be awarded custody. They testified about their family life, the conditions under which the children had been raised, and their intentions and plans for the future. An adverse factor to the prayer of appellant for custody is found in his letter of May 1977, denigrating the appellee to the children. Even though written in good faith and with full belief in the truth of the statements made therein, its obvious purpose could only have been to alienate the children from the appellee and to impair, if not destroy, their respect and affection for her. Appellant seems not to have realized the possibility of permanent psychological damage to the children and failed to display the attitude and stability of character as a parent, which would incline a court to look favorably upon a request for custody. Any

repetition of conduct of this type might be a ground to restrict visitation.

The trial court had the opportunity to hear the witnesses and to weigh their testimony. From observing and hearing the parties, the court was able to evaluate their relative fitness to have custody of the children. From an examination of the entire record, it appears that the trial court observed both the statutory requirements and judicial standards in determining the issues. The assignment of error by appellant is without merit.

The judgment of the trial court is affirmed. The appellee is allowed an attorney's fee in this court of $250.

AFFIRMED.