MYRON J. BUCHELE, APPELLEE, v. DEBRA W. TUEL, FORMERLY KNOWN AS DEBRA W. BUCHELE, APPELLANT.

284 N. W. 2d 564

Filed October 23, 1979. No. 42379.

Michael W. Amdor, for appellant.

Larry F. Fugit, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

The appellant herein, Debra W. Tuel, was formerly Debra W. Buchele, the wife of the appellee, Myron J. Buchele. Their marriage was dissolved by a decree of the District Court for Sarpy County entered on March 11, 1977. Both appellant and appellee have since married other spouses. In this opinion, the appellant will be referred to as "Debra" and the appellee as "Myron."

Debra and Myron were married on January 26, 1972, in Minot, North Dakota; and on April 20, 1973, one child, Kristopher M., was born as an issue of their marriage. In its decree entered on March 11, 1977, the District Court dissolved the marriage and awarded custody of Kristopher to Myron, with reasonable rights of visitation in Debra. At the hearing for dissolution of the marriage, Debra voluntarily appeared in the proceedings without the assistance of counsel, testified, and consented that custody of Kristopher be given to Myron, about which more will be said later in this opinion.

On November 30, 1977, Debra, having subsequently married her present husband, Wallace Tuel, filed a petition for modification of the divorce decree with reference to custody of Kristopher. Following a trial upon the petition for modification, and evidence produced therein, the court dismissed that part of Debra's petition requesting modification of the decree with respect to custody of Kristopher, but, due to the difficulty shown by Debra in obtaining visitation rights provided her in the decree, the court granted her request for a specific visitation schedule. Debra has perfected her appeal to this court from the order of the District Court dismissing her petition for modification insofar as the award of the custody of the minor child, Kristopher, is concerned, and from the overruling of her motion for a new trial. In her appeal to this court she assigns as error and contends that the order of the trial court was con-

trary to the evidence presented, and that the trial court improperly excluded evidence which existed prior to the entry of the original decree of divorce and which related to the fitness of Myron to have custody of Kristopher. We reverse and remand for further proceedings.

In her petition for modification filed in the District Court, Debra alleged that a significant change in circumstances had occurred since the entry of the decree, which made Myron an unfit and improper person to have custody of their minor child. The testimony adduced at the hearing for modification established that Debra and Myron, prior to their marriage, had agreed that if any problems developed between them and they should have to separate, any male children would go with the father and any female children would go with the mother. Debra further testified that it was because of this agreement she surrendered custody and possession of Kristopher to Myron and she did so on Myron's representation that she was to have visitation with Kristopher at any time she wished to see him. She thought at the time Myron would carry out his assurances to her and did not anticipate the problems with respect to the visitation privileges which subsequently arose. The record is clear the court was not advised of this agreement at the time of the entry of the original decree, although Myron admits that such an agreement existed.

The record further reveals Myron and Debra separated in August of 1976; and in September of 1976, Myron began living with a woman, Kathy, whom he subsequently married. The marriage of Myron and Kathy occurred immediately after the service of summons on the petition for modification and 1 day prior to a hearing held on a temporary restraining order entered in connection therewith. Although Myron and Kathy, with whom he was living at the time, had intended to marry a few months later,

Myron admitted they had moved the wedding date ahead for appearance purposes with regard to the custody hearing.

The evidence presented to the District Court came from the parties to the action, their spouses, and three other witnesses who testified as to the treatment received by Kristopher in Myron and Kathy's home. Two of the witnesses, called on behalf of Myron, testified that the child was well treated and well adjusted. Debra called as her witness one Geraldine Pickard, who had been a babysitter for Kristopher for the period of time extending from August 1976 to the fall of 1977. Her proffered testimony was excluded by the court, upon the objection by opposing counsel to lack of foundation, for the reason that it was not limited to the period of time after the entry of the original decree in which she was employed as a babysitter. In announcing its decision in the case, the court stated as its reason for excluding Mrs. Pickard's testimony: "There was never any attempt to show any of her observations, conversations or otherwise were limited to the time after March 11th of 1977. Rather all the questions that were introduced to her where objections were sustained, and the record can correct me if I'm wrong, but, * * *, you can look at it and I think I'll be absolutely correct, every single question where there was an objection as to foundation sustained, the question went with 'during the time that you sat for Kristopher' and the testimony clearly was that that time included six months prior to the decree and six months after the decree, and absent breaking that down, the foundational objection was good."

The record reveals, however, that counsel for Debra made offers of proof as to what Mrs. Pickard would have testified to, if permitted. These were on a question by question basis and are too lengthy to be included in detail in this opinion. It is sufficient to state at this point the offers indicate that had Mrs.

Pickard been permitted to testify, she would have testified, among other things, that she had seen Kathy mistreat Kristopher, strike him, and "threaten to beat the hell out of Kristopher;" that she had cautioned Myron, whom she knew as "John," to be careful of Kathy because of her treatment of Kristopher; and had asked him why he would marry a woman who would treat Kristopher as Kathy did. Also under the offers of proof, Mrs. Pickard would have testified that she had heard Kathy address Kristopher as "dumbo," that Kristopher arrived at her home dirty and she had on occasion bought clothing for him, and on occasion had to prepare breakfast for him. She also would have testified that when Kristopher had arrived at her home during rainy or snowy seasons he would not have been dressed suitably for the weather, and he on occasion arrived at her home without coat or boots. She would have further testified she had discussed with Kristopher bed-wetting and defecation problems he was having and he had told her that if he should have a potty accident Kathy would spank him. Also, according to the offer of proof, Mrs. Pickard would have testified that on six or seven occasions she admonished and cautioned Myron that his wife-to-be, Kathy, would mistreat Kristopher and would not properly care for him, and would in fact present a threat to his well-being. She also would have testified that about once a week she cautioned Kathy about her demeanor toward Kristopher, and in answer to her question to Kathy as to why she was marrying John, Kathy replied "that she was angry because she had to end up with a guy who had a damn kid." It should also be noted that in her own testimony, Kathy admitted she was a very short-tempered person. Debra contends that it was error on the part of the trial court not to admit the evidence of the babysitter, Mrs. Pickard, even though part of it related to matters which occurred prior to the entry of the original decree.

The principles which control herein may be stated as follows. The best interests of the minor children is the paramount consideration in determining custodial issues. Fleharty v. Fleharty, 202 Neb. 245, 274 N. W. 2d 871 (1979); Broadstone v. Broadstone, 190 Neb. 299, 207 N. W. 2d 682 (1973). Where a decree has been entered following trial on the merits which awards custody of the minor children, it is ordinarily not subject to modification in the absence of a material change in circumstances occurring subsequent to the entry of the decree. Walters v. Walters, 177 Neb. 731, 131 N. W. 2d 166 (1964); Gray v. Gray, 192 Neb. 392, 220 N. W. 2d 542 (1974). When a party obtains a divorce by default and fails to bring to the court's attention existing matters which concern custody of the minor children, upon proper motion for modification the court will consider such factors in determining whether a change in circumstances has occurred. Bartlett v. Bartlett, 193 Neb. 76, 225 N. W. 2d 413 (1975); Perkins v. Perkins, 198 Neb. 401, 253 N. W. 2d 42 (1977). Where one of the parties has induced the other party to permit an uncontested decree and custody award to be entered, facts establishing fraud, misrepresentation, or duress will constitute a material change of circumstances upon which a modification in custody may be based. Cline v. Cline, 200 Neb. 619, 264 N. W. 2d 680 (1978).

The original decree awarding custody to Myron was concededly not a situation involving fraud, duress, or misrepresentation upon Debra; neither was it a default decree, as she was present and testified. Sporer v. Herlik, 158 Neb. 644, 64 N. W. 2d 342 (1954). However, there was not total disclosure to the court of all factors relating to the awarding of child custody, specifically with regard to the living arrangement of Myron and the custody agreement based on the sex of the child. As we stated in Cline v. Cline, *supra*: "The judicial focus in cases such as this has been on what the trial court actually knew

at the time of the entry of the custody decree and not on what the parties knew or should have known which was not produced at the time of trial. This court has continually adhered to the principle that the best interests of the child are the governing considerations in determining custody. Modern authority supports the view that where facts affecting the custody and best interests of children existing at the time of the decree awarding custody are not called to the attention of the court, *and particularly in default cases,* where the issues affecting custody have not been fully tried, the court, upon a proper motion for modification, may consider all facts and circumstances, including those existing prior to and at the time of the judgment or decree, in making a subsequent determination of custody." (Emphasis supplied.) The rule does not appear to be restricted exclusively to default judgments. See, also, Annotation, 9 A. L. R. 2d 623, at p. 624.

The trial court was unaware of the living arrangements of Myron and his current wife at the time of the entry of the original decree awarding custody to Myron. While this factor by itself might not require admission of it as evidence at a subsequent modification hearing, in this case the woman was residing in the same household as the minor child and exercised authority over the child as to his discipline and upbringing, and yet the court had no knowledge of her existence. The relationship between the minor child and the woman living in the same household is a factor to be considered in a determination of the best interests of the child in matters relating to custody. From our review of the record, we believe that the testimony which the witness, Mrs. Pickard, sought to give related directly to the relationship between the minor child and Myron's current wife. The focus here is on what the trial court knew at the time of the entry of the custody decree. The trial court did not know of the relationship between the

child and Myron's friend, Kathy. Mrs. Pickard could have produced evidence as to this relationship but was not permitted to do so. Such evidence would be a factor worthy of consideration in determining the best interests of the minor child with regard to custody. The trial court should have allowed Mrs. Pickard to testify and its failure to do so necessitates a further hearing.

In view of what we have said herein, we need not examine the other errors assigned by Debra. We reverse and remand for further hearing to explore fully the evidence and determine which party, based on the best interests of the minor child, should have custody of Kristopher.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.