LAURA COX, ALSO KNOWN AS LAURA HENDRICKS, APPELLEE, V.
ROBERT K. HENDRICKS, APPELLANT.

302 N.W.2d 35

Filed February 13, 1981. No. 43083.

Richard J. Schicker of Cullan, Cullan & Morrison for appellant.

Thomas F. Dowd, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

McCOWN, J.

This action was commenced by the mother of a child born out of wedlock to establish paternity and obtain support for the child. The father admitted paternity and sought custody of the child. The District Court found that the petitioner mother was a fit and proper person to have custody and control of such minor child, granted custody and control to her, and ordered the father to pay $140 per month for support of the child. The father has appealed.

In April 1968 the parties to this action began living together as husband and wife. At that time the woman was 18 years old and the man was 47 years old. They never married. On December 11, 1974, a daughter was born to the parties. The parties continued to live together and both shared in providing care and financial support for their daughter. In August of 1977 the mother was hospitalized under the care of a psychiatrist and remained in the hospital for approximately 3 months. Upon her release from the hospital in 1977, the mother refused to return to the family home, took custody of her daughter, and moved into an apartment. The parties have not lived together since that time.

There is evidence in the record that following the mother's departure from the family home the father harassed her at her apartment when he was intoxicated and that she called the police on several occasions. There was also evidence that the father babysat with the child on occasion with the mother's permission. In July 1978 the mother was again hospitalized. The

mother agreed to let the father take care of the daughter while the mother was in the hospital. The father took the child in July 1978 and continued to take care of her until the date of trial in October 1979. Upon the mother's release from the hospital in October 1978, she asked the father to return the child and he refused. While proceedings were pending in this case the father continued to keep the daughter at his mobile home and the mother visited the child at the father's mobile home each weekend and occasionally during the week at the home of a babysitter employed by the father.

The case was tried in the District Court on October 1, 1979. Paternity was admitted and was not at issue. The evidence at trial established that the mother had married on May 14, 1979, and that she and her husband, who was an engineering student, lived in a four-bedroom duplex. The mother was regularly employed and had a monthly gross income of $1,086. She was also a part-time student at the University of Nebraska at Omaha. The mother testified that she had secured a babysitter for the child and that she could properly provide the necessary care and attention for her daughter.

There was also evidence at the trial that the father was an alcoholic, but that he had not had a drink since April 1978, and regularly attended meetings of Alcoholics Anonymous. He was employed by Nebraska Truck Sales and Service and his gross monthly salary was approximately $900 per month. He lived in the two-bedroom mobile home in which the parties had previously resided and left the child at the home of a babysitter during his hours of employment. At the time of trial the child was not quite 5 years old.

Neither the mother nor the father had any complaint about the care which the other had given the child at any time. Both parties love their daughter and want to have physical custody of her and the child loves both parents.

On October 23, 1979, the District Court entered its decree finding that the mother was a fit and proper person to have custody and control of the minor child, granted custody and control to her, and ordered the father to pay the sum of $140 per month for support of the child. The court also found that it had no jurisdiction to award visitation rights and therefore directed that the father may visit the child at such times as the mother may determine. The case now before us is one of first impression in this jurisdiction in determining what standards are to be used in a custody dispute between the natural parents of a child born in familial circumstances but out of wedlock, whose parents have never been married to each other.

The father contends that the District Court applied the rule that the mother of a child born out of wedlock has a legal right to its custody, care, and control superior to the right of the father or any other person, and that such action was erroneous. That rule has been applied in the past in paternity cases generally, and various reasons have been assigned as the basis for the rule. See Annot., 98 A.L.R.2d 417 (1964). In the present case the decree of the District Court does not show what rule the court followed in awarding custody of the child to the mother. The decree does find that the mother is a fit and proper person to have custody and control of the child and makes no finding as to the fitness of the father.

The case at bar is not the usual paternity case in which the mother seeks to establish the paternity of her child against a putative father who has denied paternity. In this case the parties lived together as husband and wife for almost 10 years, and the father has not denied paternity but acknowledged it and accepted his paternal responsibilities. During the lifetime of the child the father continuously fulfilled the role of a father and maintained a parental and familial relationship with his child. The relationship continued even after the parties were separated, and

the father had physical custody of the child for more than a year prior to trial.

U.S. Supreme Court cases reflect the expanding concepts of the nature and extent of the rights of putative fathers. See, *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978); *Caban v. Mohammed*, 441 U.S. 380, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979).

Modern cases tend to hold that where an unwed father has demonstrated a familial relationship with his child the courts do not grant a superior right of custody to the mother but decide custody issues on the basis of the best interests of the child. Kern, *Unwed Fathers: An Analytical Survey of Their Parental Rights and Obligations*, 1979 Wash. U.L.Q. 1029; Note, *The Putative Father's Paternal Rights: A Focus on "Family,"* 58 Neb. L. Rev. 610 (1979).

The clear trend in recent cases is to disregard the fact that a child was born out of wedlock in deciding custody disputes between natural parents. The case of *Pruitt v. Jones*, 62 Ohio St. 2d 237, 405 N.E.2d 276 (1980), reflects that view. In that case the natural mother of a child born out of wedlock brought a habeas corpus action against the natural father for custody of the child. The parties stipulated that they were the natural parents of the child and that they had never been married to each other. The Ohio Court of Appeals found the mother had a valid and immediate right to custody. The Ohio Supreme Court, on appeal, held that the lower court had erred in taking into account the fact that the child was born out of wedlock, and said: "We are unable to discern any difference between the present case, dealing with an illegitimate child, and a case dealing with a legitimate child. In both types of cases, when the controversy is between the child's natural parents, our main concern remains with the best interests of the child. The necessary corollary to this concern is the need for determining the suit-

ability of the parents. [Citations omitted.]" *Id.* at 238, 405 N.E.2d at 276-77. See, also, *Alberto B. v. Rosa O.*, 102 Misc. 2d 147, 423 N.Y.S.2d 111 (1979).

In a paternity action where paternity has been admitted and the natural father has demonstrated a familial relationship with the child and has fulfilled parental responsibilities of support and maintenance, the fact that the child was born out of wedlock should be disregarded, and custody and visitation of minor children should be determined on the basis of the best interests of the children. In determining with which of the natural parents the children shall remain, the standards set out in Neb. Rev. Stat. § 42-364 (Reissue 1978) are to be applied.

In the case at bar, while the court made no affirmative finding that the award of custody to the mother was in the best interests of the child, there is sufficient evidence to support such a finding and to justify the award of custody to the mother, regardless of the rule which may have been applied in reaching that result.

The District Court, however, misapplied the case of *Paltani v. Creel*, 169 Neb. 591, 100 N.W.2d 736 (1960), in determining that the court had no jurisdiction to award visitation rights in the present case. *Paltani* was decided on a demurrer on the issue of lack of jurisdiction in a statutory paternity case brought by the father. Although *Paltani* invalidated a decree which in part awarded visitation rights to a natural father, the issue of visitation rights was not directly considered nor ruled upon.

The case at bar is also a case of first impression as to the issue of visitation privileges of unwed fathers, at least in the modern era. In 1972, at the time the U.S. Supreme Court decided *Stanley v. Illinois, supra*, only six states granted an unwed father visitation privileges over the opposition of the mother. Today, however, virtually all states which have considered the issue have granted the father a right to reasonable visitation if it is in the best interests of the child. See,

for example, *State ex rel. Wingard v. Sill,* 223 Kan. 661, 576 P.2d 620 (1978); *Gardner v. Rothman,* 370 Mass. 79, 345 N.E.2d 370 (1976). As the Supreme Court of Kansas said in the *Wingard* case: "The day is gone when the putative father has no parental rights under the law." *Id.* at 665, 576 P.2d at 624.

In an action to establish paternity, issues of custody. and visitation rights are incidental to the primary cause of action and fall within the general equity jurisdiction of the District Court. The District Court has jurisdiction to award reasonable visitation rights to the father in an appropriate case. In the case at bar the District Court did not determine visitation rights, citing lack of jurisdiction.

For the reasons stated, the decree of the District Court is affirmed in all respects except the provision that the "respondent may visit such child at such times as petitioner may determine." That portion of the decree is vacated and the cause remanded for further proceedings as to visitation rights.

AFFIRMED IN PART, AND IN PART
VACATED AND REMANDED.