STATE OF NEBRASKA EX REL. BOBBIE LINDA MARIE LAUGHLIN, APPELLANT, V. LARRY LEO HUGELMAN, APPELLEE.

361 N.W.2d 581

Filed February 8, 1985.    No. 84-383.

Michael J. Elsken, for appellant.

Laureen Van Norman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Bobbie Linda Marie Laughlin, and the appellee, Larry Leo Hugelman, are the natural parents of minor twin children, born out of wedlock. Laughlin appeals from an order entered by the district court for Lancaster County, Nebraska, which granted to Hugelman the permanent custody of the twins, subject to Laughlin's reasonable rights of visitation. Laughlin maintains that the district court's order was erroneous because (1) there was no material change of circumstance such as would permit the court to change the custody of the children from the mother to the father and (2) the trial court erred in admitting into evidence testimony regarding proceedings held before the separate juvenile court of Lancaster County prior to the date on which the district court for Lancaster County determined that Hugelman was the putative father. We affirm the judgment of the district court.

The record reflects that on March 4, 1980, Laughlin gave birth to twins. Hugelman apparently denied that he was the father of the children, and an action for paternity was subsequently commenced. Thereafter, on September 11, 1981, pursuant to a stipulation entered into between the parties, the district court entered an order finding that Hugelman was the natural father of the children and ordering him to pay a specific amount of child support. No specific finding was made in the order determining paternity as to who should have legal custody of the children. It would appear from the record that no evidence was introduced by either party regarding legal

custody and that the issue of custody was not considered by the court.

The record does, however, disclose that sometime prior to September 11, 1981, a petition was filed in the separate juvenile court of Lancaster County, Nebraska, alleging that Laughlin neglected or refused to provide proper or necessary subsistence and medical care to her children and that, upon inspection, the home was found to be dirty and unsanitary. The petition further alleged that the twins were found in a urine-soaked playpen, that there were flies on both children, and that they were malnourished. Laughlin admitted the allegations in the petition, and also admitted that she had neglected the children. The juvenile court accepted her admission as having a factual basis and declared the children neglected. The children were later returned to Laughlin's custody, subject to supervision by the welfare department, and subject to certain conditions. At a later hearing the juvenile court found that the conditions of the order had not been met due to the fact that the twins had been placed in foster care from November 5, 1980, to early February 1981.

At a hearing on March 3, 1981, the juvenile court found the Laughlin children to be homeless and destitute and without proper support within the meaning of Neb. Rev. Stat. § 43-202(2) (Reissue 1978), and once again placed them in foster homes. On May 5, 1981, the juvenile court found that the children should be returned to Laughlin, subject to the supervision of the welfare department. The supervision was discontinued and the juvenile court petition dismissed on July 3, 1981.

The evidence further discloses that after September 11, 1981, when Hugelman was declared to be the father of the children, he regularly exercised his right of visitation and paid all of the child support ordered, even during periods of time when he was not employed. On March 9, 1982, pursuant to a stipulation entered into between Laughlin and Hugelman, custody of the children was given to Hugelman, who had since married someone else. In September of 1983 Laughlin filed an application requesting that the twins be restored to her possession and that child support be modified to reflect new

employment obtained by Hugelman. Hugelman counter-claimed, alleging that it was in the children's best interests to remain with him, and requested that he be granted permanent custody. On April 11, 1984, the district court granted permanent custody of the children to Hugelman, subject to Laughlin's reasonable rights of visitation.

Citing *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981), Laughlin argues that in a paternity case a presumption exists favoring custody of a child born out of wedlock with the mother, absent the existence of a familial relationship between the child and the father. Laughlin then argues that because the father in this case denied paternity until the order of the court on September 11, 1981, he has not established such a familial relationship with the children and, hence, is not entitled to consideration for custody. We do not believe that to be the correct view. The basis for our decision in *Cox* was to recognize that the traditional presumption granting custody of illegitimate children to the mother in all cases should be abandoned. We said in *Cox* at 28, 302 N.W.2d at 38:

> In a paternity action where paternity has been admitted and the natural father has demonstrated a familial relationship with the child and has fulfilled parental responsibilies of support and maintenance, the fact that the child was born out of wedlock should be disregarded, and custody and visitation of minor children should be determined on the basis of the best interests of the children. In determining with which of the natural parents the child shall remain, the standards set out in Neb. Rev. Stat. § 42-364 (Reissue 1978) are to be applied.

The evidence is clear that from and after September 11, 1981, when it was determined that Hugelman was the father, he has maintained a familial relationship with the children, exercising his rights of visitation, and providing them with support and, at times, a home and family. It seems to us that the better rule must be that where, as here, it is determined that an individual is the natural parent, even though one may initially deny paternity, and thereafter establishes a familial relationship with the children, both emotional and financial, the question of which parent should have custody of the children should be

determined on the basis of the best interests of the children. We believe, therefore, that no presumption as to custody exists in this case, and, instead, we are required to determine what is in the children's best interests. While Hugelman did not at the outset admit he was the natural father, he met the test set out in *Cox* in all other respects once paternity was determined.

When we examine the record to determine what is in the best interests of the children, it appears without serious question that leaving them with the father is indeed in their best interests. A review of the record discloses that, on the one hand, Hugelman is married, maintains stable employment and a good home, and, by all accounts, loves the children. Two witnesses specifically testified that the children are affectionate toward him and that he treats them well. On the other hand, Laughlin herself testified that she has lived at six different residences in the last 3 years. By her own admission she is a rather poor housekeeper and, at the time of the trial, was living with a woman who had been declared incapacitated due to chronic drug and alcohol abuse. Additionally, the woman's unmarried lover and the woman's child were also living with Laughlin. While none of these factors, either standing alone or taken together, may be of such nature to find Laughlin unfit, when compared to the home offered by the father, they require us to find that placing custody of the children with the mother is not in the children's best interests.

Laughlin argues that unless there has been a substantial change in circumstances, the custody of the children should not be changed from her to the father. See *Helgenberger v. Helgenberger*, 209 Neb. 184, 306 N.W.2d 867 (1981). We believe that the argument fails for two reasons. In the first place, there is no indication that custody was ever initially determined by the court. There is, therefore, no issue regarding a change of custody as contemplated by the rule. While it is true that during a portion of the children's young lives they have been in the physical custody of the mother, it is likewise true that at other times they have been in the physical custody of the father, or in foster care. The initial order determining paternity simply did not address the question of custody, and therefore it is difficult for us to see how it can be said that the court is modifying an

earlier custody order.

The second reason why the argument has no merit is that no evidence regarding the best interests of the children was ever presented to the trial court when paternity was determined. When the paternity order was entered, it appears that the court was unaware that Laughlin had admitted that her children had previously been neglected. It is likely that had these matters been presented to the court and a dispute over custody of the children had arisen, Laughlin would not have been awarded the custody of the children in the first instance. Laughlin's argument runs something to the effect that there is not a change in circumstance if the evidence discloses that the mother was deficient before she acquired physical custody of the children and remains equally deficient thereafter. Such an argument would totally ignore the best interests of the children and obviously could not be the rule to be followed by this court. In considering the best interests of the children, we are compelled to agree with the trial court and find that the best interests of the children require that they remain with the father.

Laughlin's other assignment of error is to the effect that the trial court erred in permitting evidence of the earlier juvenile proceedings to be admitted in the subsequent custody proceedings. In our view the evidence was clearly admissible in a case of this nature. In the case of *Buchele v. Tuel*, 204 Neb. 641, 646-47, 284 N.W.2d 564, 568 (1979), a similar argument was advanced in a custody proceeding following the divorce of the parties. In rejecting that argument we said:

> The original decree awarding custody to Myron was concededly not a situation involving fraud, duress, or misrepresentation upon Debra; neither was it a default decree, as she was present and testified. [Citation omitted.] However, there was not total disclosure to the court of all factors relating to the awarding of child custody, specifically with regard to the living arrangement of Myron and the custody agreement based on the sex of the child. As we stated in Cline v. Cline, *supra*: "The judicial focus in cases such as this has been on what the trial court actually knew at the time of the entry of the custody decree and not on what the parties knew or should

have known which was not produced at the time of trial. This court has continually adhered to the principle that the best interests of the child are the governing considerations in determining custody. Modern authority supports the view that where facts affecting the custody and best interests of children existing at the time of the decree awarding custody are not called to the attention of the court, *and particularly in default cases*, where the issues affecting custody have not been fully tried, the court, upon a proper motion for modification, may consider all facts and circumstances, including those existing prior to and at the time of the judgment or decree, in making a subsequent determination of custody." (Emphasis supplied.)

We can think of nothing more relevant for consideration by the court in attempting to determine what is in the best interests of the children than the proceedings which earlier had determined by Laughlin's own admission that the children had been neglected. Certainly the manner in which Laughlin cared for the children prior to the present proceedings is extremely relevant, if not perhaps the most relevant evidence. The district court was correct in admitting into evidence the earlier proceedings in this case.

For these reasons, therefore, the decision of the district court in awarding permanent custody of the minor children to the appellee, Larry Leo Hugelman, is affirmed.

AFFIRMED.