JAIME ALAN FARR, APPELLEE, V. NANCY CHERYL NEWTON, FORMERLY KNOWN AS NANCY CHERYL FARR, APPELLANT.
474 N.W.2d 683

Filed September 27, 1991.   No. 90-631.

Michael N. Schirber, of Schirber Law Offices, P.C., for appellant.

Michael B. Kratville, of Kratville Law Offices, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The respondent, Nancy Cheryl Newton, formerly known as Nancy Cheryl Farr, has appealed from the June 7, 1990, order of the district court denying her application to modify the decree dissolving the marriage of the parties so as to give her custody of their minor child.

The parties were divorced on September 16, 1988. The decree placed custody of the parties' minor child, Alex Reno Farr, who was born on November 13, 1985, with the petitioner, Jaime Alan Farr. The respondent was to have visitation with Alex as the parties mutually agreed, but if the parties were unable to agree on visitation, a specific schedule was set forth in the decree.

On October 17, 1989, the respondent filed an application to modify the decree, requesting custody of Alex and child support. The matter was heard on April 26, 1990.

At the hearing, the respondent attempted to present evidence regarding her fitness as a parent at the time of the decree. The

petitioner's objections to that evidence were sustained. The respondent offered to prove that at the time of the decree, the reasons the parties agreed to the petitioner's custody of Alex were that the respondent was abusing alcohol, staying out late, and being unfaithful to the petitioner.

The respondent testified that at the time of the decree, she was not represented by legal counsel, was not employed, and did not have a permanent place of residence. Following the divorce, the respondent lived in Idaho until she moved to Lowville, New York, in February 1989. She has been employed in Lowville as an office worker for a car dealership since March 1989. She was earning $240 a week gross at the time of the hearing.

In May 1989, the respondent remarried. Her husband works at a paper mill, and in 1989, the couple had a joint adjusted gross income of approximately $33,000.

The respondent and her husband live in a two-bedroom apartment. There is an elementary school within walking distance, and there are children in the neighborhood with whom Alex can play. While the respondent is at work, her husband or his mother cares for Alex.

In February 1989, the petitioner had suggested the respondent should take custody of Alex because he did not have enough time to spend with Alex. The petitioner was planning to attend graduate school and thought it would be a good idea if Alex lived with the respondent during the school year and visited with him during the summer. The petitioner suggested they have an attorney draw up papers changing custody and that they split the attorney fees.

In August 1989, the petitioner informed the respondent he was voluntarily separating from the U.S. Air Force and wanted the respondent to take Alex for the summer because of her good job and nice home. The petitioner was having a difficult time supporting Alex and felt guilty because he was not able to spend time with Alex, and he knew the situation would deteriorate when he started attending graduate school full time.

In September 1989, the petitioner changed his mind about sending Alex to live with the respondent because petitioner was concerned his father would turn his back on him if he gave up

custody.

After the respondent filed her application to modify custody, the petitioner interfered with prearranged visitation rights. The respondent was compelled to file a motion for visitation, and the trial court granted the respondent's motion, allowing her the 10-week period previously agreed to by the parties.

The respondent presented a variety of witnesses who testified that she and Alex have a warm and loving relationship. No witness had seen the respondent abuse alcohol or drugs, and the respondent testified that she no longer has the problems that she had when she agreed to the petitioner's custody of Alex in September 1988.

From the entry of the decree to the time of the hearing, the petitioner had possession of Alex 44 weeks, the respondent had possession of Alex 31 weeks, and the petitioner's father had possession of Alex 7 weeks. During the extensive periods of time the respondent had possession of Alex, the petitioner vacationed outside the country and made two trips to Colorado to ski.

The petitioner testified that after the divorce, he worked full time in the Air Force and attended college full time, too. He graduated from college in December 1989 with a B.S. degree in biology from the University of Nebraska at Omaha. He was scheduled to separate from the Air Force on May 28, 1990, and planned to move to Oregon for the summer and then move to College Station, Texas, to attend a graduate program in veterinary science at Texas A & M University on a full-time basis. He would be receiving a minimum of $10,000 in grants and would not be employed full time. He planned to have Alex in day care while he attended classes.

The petitioner and Alex spend time outside playing when the weather permits. Petitioner expects to have more time for activities such as attending the zoo or a football game when he moves to Texas.

Tom Haley, a licensed psychologist who has known Alex since his birth, testified on behalf of the petitioner. He testified that the petitioner and Alex have a strong, positive relationship and that Alex would be "devastated" by a change of custody. Haley was impressed with the petitioner's method of

disciplining Alex.

Haley had not evaluated Alex professionally. His opinion was based on his personal observations.

Haley and the petitioner's mother work together. They have been friends for 5 years and are involved romantically and sexually.

Janet Rush, the respondent's sister, was called in rebuttal to Haley's testimony. She related an incident that occurred in November or December 1988 when she, the petitioner, and Alex were traveling from York, Nebraska, to Omaha. Alex was misbehaving, and the petitioner was driving. The petitioner told Alex to stop misbehaving or he would pull the car over. Alex continued to misbehave, and the petitioner threatened to leave the child on the side of the road.

The trial court found that there had not been a change in circumstances affecting Alex's best interests and left custody with the petitioner. The respondent was ordered to have possession of Alex for 3 months every summer. The trial judge made these findings on the record following the hearing and instructed petitioner's attorney to draft an order containing the judge's findings. He also instructed that the parties work something out regarding Christmas visitation; however, nothing regarding visitation at Christmas appears in the order of June 7, 1990.

The respondent has appealed from that order and has assigned as error the trial court's failure to allow her to present evidence regarding the circumstances of the parties existing at the time of the original decree; the trial court's finding there had not been a material change in circumstances affecting the best interests of Alex, and its denial of her application to modify; the trial court's failure to provide for holiday visitation; and the trial court's failure to award her reasonable attorney fees, court costs, and other incidental costs.

A decree of dissolution awarding custody of a minor child will not be modified unless there has been a change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990). The determination as to such modification is a matter of discretion

for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. *Id*. "An abuse of discretion takes place when the trial court's ruling is untenable such that it deprives a party of a substantial right and just result." *Brooke v. Brooke*, 234 Neb. 968, 971, 453 N.W.2d 438, 440 (1990).

When a party obtains a divorce by default and facts existing at the time of the decree that affect the custody and best interests of the children are not called to the attention of the court, upon proper motion for modification, the trial court, in its discretion, may consider such facts in determining whether a change in circumstances has occurred. *Buchele v. Tuel*, 204 Neb. 641, 284 N.W.2d 564 (1979). In this case, the respondent attempted to elicit testimony from the petitioner regarding her parental fitness at the time of the decree. When the petitioner's objection to the evidence was sustained, the respondent made an offer of proof as to the facts she wanted to introduce. Later in the hearing, she testified regarding some of those facts.

The judge who heard the application for the change of custody in this case was not the same judge who entered the decree of dissolution in 1988. As a result, there was no basis upon which to make a finding that there had been no material change in circumstances affecting the best interests of the child. However, the ruling preventing the respondent from presenting evidence concerning the circumstances existing at the time the marriage was dissolved does not require a reversal of the judgment and remand of the cause upon that ground.

The evidence which was received shows a material change in many of the circumstances affecting the best interests of the child.

The respondent testified without objection that at the time of the decree, she was unemployed and did not have a permanent residence. At the time of the hearing on the respondent's application to modify, the respondent had been employed with the same car dealership for over a year and was earning take-home pay of approximately $167 a week. The respondent had remarried and had maintained the same place of residence for over a year. The respondent was in a position to provide the kind of home for Alex that she had been unable to do at the time

of the decree.

There is also evidence that the petitioner's circumstances had changed, which would affect Alex's best interests. At the time of the decree, the petitioner was working full time and attending school on a full-time basis. At the time of the hearing, the petitioner had voluntarily quit his full-time employment to pursue a full-time course of graduate study in veterinary medicine. This also required the petitioner to make a move to Oregon for the summer and then to College Station, where his living arrangements and care for Alex were at best uncertain at the time of the hearing.

Furthermore, the petitioner had expressed on more than one occasion his ambivalence regarding his ability to retain custody of Alex. The petitioner's change of heart as to placing Alex with the respondent appears to have been a response to pressure from his own father. The petitioner had left Alex in the possession of the respondent or his father for several periods of extended visitation, which tended to indicate an inability or unwillingness to provide appropriate care for his son.

The facts of this case are somewhat similar to those in *Bartley v. Bartley*, 197 Neb. 246, 248 N.W.2d 39 (1976), where this court affirmed the trial court's modification of custody in that case from the mother to the father. In that case, there was evidence in support of the trial court's conclusion that there had been a change of circumstances affecting the child's best interests which showed that the mother had been ambivalent on occasion about wanting her child and that she was responding in some degree to family influence in her resistance to the change of custody. Also in the *Bartley* case, the father had remarried and his marriage appeared to be proceeding satisfactorily.

We conclude that considering the changed circumstances of both parties, it is in Alex's best interests that his custody be placed with the respondent. The respondent is able to provide a more stable home, a family environment, and care for Alex.

We also conclude that the trial court erred in failing to specify a Christmas visitation schedule. See *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987).

Because of the distance between the parties, Alex should be

in the possession of the respondent during the school year and with the petitioner during the summer vacation. The parties should alternate possession of the child for the Christmas holiday, the details of which shall be specified by the further order of the district court.

On February 22, 1990, the petitioner filed an application requesting that the respondent's child support obligation be increased. In the order dated June 7, 1990, the trial court ordered the respondent to pay $250 per month commencing October 1, 1990, for the months of October through May of each year. In view of our finding concerning the custody of the child, it is necessary to modify the order regarding child support. The modification should be made in view of the present circumstances of the parties, and for that reason we direct that an appropriate order be made by the trial court upon the remand of the cause.

The cause is remanded to the district court for further proceedings, with directions to modify the order of June 7, 1990, in conformity with this opinion.

All costs are taxed to the petitioner, and the respondent is allowed the sum of $1,000 for the services of her attorney in this court.

REMANDED WITH DIRECTIONS.