Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/31/2016 09:06 AM CDT

STATE OF NEBRASKA ON BEHALF OF CARTER W.,
A MINOR CHILD, APPELLEE, V. ANTHONY W.,
DEFENDANT AND THIRD-PARTY PLAINTIFF,
APPELLEE, AND CYNTHIA H., THIRD-PARTY
DEFENDANT, APPELLANT.

___ N.W.2d ___

Filed May 31, 2016.    No. A-15-158.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Visitation: Appeal and Error.** Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. ____: ____. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.
5. **Child Custody: Appeal and Error.** In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
6. **Child Custody.** Courts typically do not award joint legal custody when the parties are unable to communicate effectively.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed.

Jerry L. Soucie for appellant.

Linsey A. Camplin and Jessica Ledingham, Senior Certified Law Student, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Cynthia H. appeals from an order of the district court for Lancaster County determining custody, parenting time, and child support for the minor child, Carter W. Cynthia challenges the court's decision to grant joint legal and physical custody, and she asserts the court failed to follow the local court rules in determining the parties' respective parenting time. For the reasons that follow, we affirm.

## BACKGROUND

Cynthia and Anthony W. began a relationship in the summer of 2009 and conceived a child in January 2010. They moved in together in the summer of 2010, and their son, Carter, was born in September. Their romantic relationship ended in September 2011.

Immediately after the parties' separation, Anthony's parenting time with Carter was not specifically scheduled and the time and duration varied. On January 26, 2012, the Lancaster County Attorney filed a complaint to establish support, and Anthony's acknowledgment of paternity was attached. Anthony agreed to the child support calculation proposed by the county attorney. A referee's report was filed stating that Carter resided with Cynthia and that Anthony was able and capable of supporting Carter. The report contained the parties' stipulation to the amount of support to be provided to Cynthia by Anthony. Anthony was not represented by counsel and testified that he was not aware that the referee's report reflected a stipulation that Cynthia had, or should have, sole custody of Carter.

- 49 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
STATE ON BEHALF OF CARTER W. v. ANTHONY W.
Cite as 24 Neb. App. 47

In April 2013, the parties agreed to split their time with Carter on a "week on/week off" basis. Cynthia said she anticipated the schedule would end in September. In August 2013, Anthony filed a complaint for determination of custody and parenting time and sought decisions regarding issues including temporary and permanent custody, parenting time, and child support. In September, Anthony filed a motion for temporary custody and requested temporary legal and physical custody or, in the alternative, joint legal and physical custody of Carter.

A hearing on the motion for temporary custody was scheduled for November 18, 2013, and the parties were to be allowed one-half hour to present evidence. The hearing was continued to December 19. Both parties testified, and the court received multiple exhibits without objection. The exhibits included Anthony's affidavit and proposed child support calculation, Cynthia's proposed parenting plan and child support calculation, and the income statements of both parties.

On December 23, 2013, the district court entered a temporary order granting joint legal and physical custody with an exchange of physical custody occurring on a weekly basis. A hearing on Anthony's complaint for determination of custody and parenting time occurred on November 17, 2014. Cynthia and Anthony both testified.

Anthony testified that he began working at a retail store in Lincoln on September 27, 2014. He works from 8 a.m. to 5 p.m., except for one night per week, when he closes the store, and he receives $50,000 per year for this occupation. He testified that he decided to work there because the schedule allowed him to spend more time with Carter and that it offered an increased salary. He was previously employed by a detention center and a social services organization. He was still considered an on-call employee for both of those employers, but he had not worked any shifts since he began working for the retail store.

Anthony testified that he moved multiple times in the year prior to the hearing. He testified that in December 2013, he moved from a one-bedroom apartment to ensure that Carter would have a room of his own. In 2014, he canceled his lease in anticipation of a move into a home with his girlfriend, but the home was not available right away because of remodeling delays. As a result, he moved into his girlfriend's apartment, and then into the home when it became available in November. He testified that he signed an 18-month lease at that time and has no plans to move. He stated that he plans to remain in a long-term relationship with his girlfriend.

Anthony testified that when he picks up Carter from daycare, they play and cook dinner together, then Carter takes a bath, and they watch TV or read books before bedtime. Anthony testified that the parties have been complying with the week on/week off parenting schedule and that he believed it was "going really great." He testified that he does not believe that continuing with this schedule would be disruptive to Carter or his education in the future.

The parties agreed to exchanges of Carter at daycare, and the few face-to-face exchanges which occurred took place in public or with a third party present. Cynthia testified that she believed Anthony should continue to be actively involved in Carter's life and in decisions which affect it. She said it is "of value that [he] has a very good relationship with his son."

Cynthia testified that she works full time as a program specialist for the State of Nebraska. She began her job as a part-time employee in February 2013 while she finished her master of science degree, and she was hired as a permanent employee in May 2013.

She testified that she was concerned that week on/week off parenting time would cause instability and anxiety. She said it could cause stress which would impact Carter's sleeping patterns, behavior, cognitive functioning, and ability to focus in school.

Cynthia testified that at times she smelled the odor of alcohol on Anthony, when she knew he had been out the night before. She testified that there were times that she did not want Carter to go with Anthony, but her concerns regarding alcohol use did not prevent her from letting Carter leave with him. There was one instance when she did not allow Carter to leave because Anthony arrived late and it was Carter's naptime. These instances were prior to the temporary order of the district court.

Anthony testified that in February 2014, he drove under the influence of alcohol and hit a parked vehicle with his vehicle. Anthony was fined for driving under the influence of alcohol and sentenced to 14 days of house arrest. He has an ignition interlock device in his vehicle and has not had any violations of that device. He testified that he has not had anything to drink since that incident occurred, and at the temporary hearing, he stated that he never picked up Carter while under the influence of drugs or alcohol.

On January 30, 2015, the district court entered an order placing legal and physical custody of Carter jointly with Cynthia and Anthony. The court incorporated the parenting plan proposed by Anthony and ordered Anthony to pay child support in the amount of $60 per month.

The parenting plan provided for parenting time with each parent every other week, with the exchange to occur at 4 p.m. on Friday. Recognizing that cooperation between the parents is in the child's best interests, the plan provided that the parents should not disparage or denigrate the other parent and that they should cooperate "to the fullest extent necessary" to foster and promote a safe, secure, and loving environment for the child. The parents were to cooperate and inform each other about medical, religious, educational, social, and extracurricular matters. The plan provided that the parties should communicate regarding these matters in a "communication notebook" which would be transferred with the child to the other parent at the end of each parenting time period. The

- 52 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF CARTER W. v. ANTHONY W.
Cite as 24 Neb. App. 47

district court also incorporated the mediated agreement of the parties regarding holidays, vacations, and special occasions, as well as the agreement that the primary means of communication between the parties should be through text message. The parties agreed that the text messages would be limited to issues regarding Carter and that there would be only one message conversation initiated per day.

Cynthia timely appealed the order of the district court.

## ASSIGNMENTS OF ERROR

Cynthia asserts the district court erred in awarding joint legal and physical custody, and she asserts the court failed to follow the local court rules in determining the parties' respective parenting time.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[2] Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

[3,4] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

[5] In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court

- 53 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF CARTER W. v. ANTHONY W.
Cite as 24 Neb. App. 47

considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

The district court found that legal and physical custody of Carter was to be placed jointly with Cynthia and Anthony. The court specifically found that both parties were fit and proper parents to have custody, and it provided a plan for communication between them in the interest of mutual participation and cooperation for the benefit of the child. Part of this plan included the use of a communication notebook in which the parties would document important information so the other parent would be fully informed at the end of each parenting time period.

Cynthia asserts that joint custody should be an option only if the parties can communicate in an open and supportive manner and asserts that the agreement to communicate through one text message conversation per day and a weekly exchange of a communication notebook is evidence that the court erred in determining that joint legal and physical custody was in Carter's best interests. Cynthia argues the joint custody determination was not accompanied by any "attempt to explain why such a cumbersome communications plan made any sense or was in any way, shape, or form in Carter's best interest." Brief for appellant at 32.

[6] The Parenting Act defines "[j]oint legal custody" as "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2014). We acknowledge that courts typically do not award joint legal custody when the parties are unable to communicate effectively. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). However, a trial court's decision to award joint legal or physical custody can be made without parental agreement

or consent so long as it is in the child's best interests. *Id.* Neb. Rev. Stat. § 42-364(3) (Cum. Supp. 2014) states:

> Custody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.

Section 42-364 has also been applied to custody disputes in paternity actions. See *State on behalf of Maddox S. v. Matthew E., supra*. See, also, *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981).

The district court specifically found that both parents are fit and proper parents and that cooperation between them is in Carter's best interests. The court chose not to favor one parent over the other with regard to parenting time or legal custody.

In affording such deference to the trial courts, appellate courts have in some instances declined to reverse trial court decisions where joint custody has been awarded or maintained even when the evidence demonstrates a lack of communication or cooperation between parents. For example, in *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015), the Nebraska Supreme Court affirmed a district court's denial of a father's request to modify from joint legal custody to sole legal and physical custody despite an apparent inability of the parties to parent cooperatively with one another. The Supreme Court stated as follows: "Given the record in this case, and given our standard of review and deference to the trial court's determinations with respect to the credibility of the witnesses, we cannot say that the court's denial of the modification of custody was clearly untenable or an abuse of discretion." *Id*. at 87, 871 N.W.2d at 243.

Likewise, in *State on behalf of Maddox S. v. Matthew E., supra*, this court affirmed the district court's modification of the parenting plan in spite of the parents' communication difficulties. The modification specifically divided joint legal custody responsibilities between the parties in a manner that would minimize contact and conflict between them. We gave deference to the district court's attempt to find a workable solution to protect the child's best interests despite the "power struggle" between the parties. *Id.* at 520, 873 N.W.2d at 220.

In this case, the parties have demonstrated the ability to communicate regarding matters affecting Carter between the temporary order in December 2013 and the hearing in November 2014. Anthony testified that the parties have communicated mostly by text and telephone and that he felt it has been working. He testified that he felt they could reasonably discuss and come to a solution on any issues regarding Carter in the future. Cynthia testified that she believed a joint custody arrangement would cause instability and anxiety and that communication with Anthony has followed a pattern of "power and control." She testified that the mediated agreement placed boundaries on the text messages between the parties because they did not engage in healthy communication. The text messages submitted as evidence contained an exchange regarding the parties' prior relationship which would be outside of the boundaries set by the parties. Cynthia testified that the messages were designed to manipulate her emotions. However, there was no showing that the messages were exchanged after the parties agreed in mediation to limit the content of the messages to only information about Carter, and the language used was not violent, vulgar, or abusive. There is little evidence that the parties have not been able to communicate for the benefit of the minor child.

Cynthia asserts that awarding joint physical and legal custody when the parties are unable to communicate represents a "default disposition" by the trial court and is contrary to

established case law that joint custody is not favored by the courts of this state. Brief for appellant at 32. Contrary to her assertions, however, the trial court's order was specifically tailored to the evidence presented and did not represent a default disposition. The district court respected the parties' agreement to place boundaries on their communication, and the order incorporated the partial mediated agreement, including their agreement to initiate only one text message conversation per day. The order attempted to further facilitate healthy communication by ensuring that each party is fully informed about important issues related to Carter through the use of a communication notebook. The notebook allows an exchange of information on a weekly basis, while the option of one daily text message conversation allows for information to be shared on a day-to-day basis as needed. Upon our de novo review of the record, we find the district court did not abuse its discretion in devising a plan for communication which will hopefully minimize conflict between the parties.

Cynthia also asserts that Anthony's "performance during 2014 between the temporary custody award and the final hearing was nothing short of a disaster" and that therefore joint custody is inappropriate. Brief for appellant at 37. The evidence shows that Anthony made mistakes, including driving under the influence of alcohol. However, he has complied with court orders and changed his behavior, avoiding the consumption of alcohol to ensure the same mistakes will not happen again. In addition, the evidence shows that although Anthony changed jobs and moved several times in 2014, these changes were made to provide a stable, more long-term living situation for Carter and allow them to spend more time together.

Appellate courts review custody decisions for an abuse of discretion and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). See, also, *Aguilar v. Schulte*, 22 Neb.

- 57 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
STATE ON BEHALF OF CARTER W. v. ANTHONY W.
Cite as 24 Neb. App. 47

App. 80, 848 N.W.2d 644 (2014). Upon our de novo review, we find the district court did not abuse its discretion in finding joint custody was in Carter's best interests.

Cynthia also asserts the district court erred "when it failed to comply with local rule 3-9 and grant parenting time to [Anthony] as set forth in Third Judicial Local Rule 3-9 Appendix Form 3." Brief for appellant at 38. According to the local rules, Appendix Form 3 is "a standard parenting time schedule which, in the absence of unusual circumstances, the court finds provides reasonable parenting time for the noncustodial parent in cases in which the parties are unable to agree otherwise." Rules of Dist. Ct. of Third Jud. Dist. 3-9(F)(a) (rev. 2013). Having determined the district court did not abuse its discretion in awarding joint custody, we find it would not have been proper to use Appendix Form 3. That form applies when allocating parenting time between custodial and noncustodial parents, and in this situation, the parties hold joint physical and legal custody. The district court's final order incorporated an exhibit which contained the parties' partially mediated agreement. The mediated agreement addressed issues including expenses incurred on behalf of the child, parenting time for holidays, vacations and special occasions, communication between the parties, and how disagreements or modifications would be handled. The mediated agreement was offered at the hearing and received without objection. We find the district court did not err in incorporating a parenting time schedule other than the schedule provided in Appendix Form 3.

## CONCLUSION

For the reasons stated above, we affirm the order of the district court granting joint legal and physical custody.

Affirmed.